IN THE MATTER OF JOHN E. WARREN AND GERALD SOWA.

Argued October 24, 1989—Decided December 4, 1989.

*Carol A. Blasi*, Deputy Attorney General, argued the cause for appellant New Jersey Department of Corrections (*Peter N. Perretti, Jr.*, Attorney General of New Jersey, attorney; *Michael R. Clancy*, Assistant Attorney General, of counsel).

*Robert A. Fagella* argued the cause for respondent John E. Warren (*Zazzali, Zazzali, Fagella & Nowak*, attorneys).

PER CURIAM.

This case is before us on appeal as of right under *Rule* 2:2–1(a)(2) because of a disagreement among the Appellate Division members over whether the Merit System Board had properly determined that a period of suspension, and not removal, was the appropriate discipline for a prison guard. The dissent concerns only the discipline of John E. Warren, one of the parties charged.

All agree that a court may not contravene the Board's measure of discipline unless the court finds that the Board's action was arbitrary and capricious. This shorthand expression for the scope of judicial review really encompasses three inquiries: (1) whether the agency's action violates the enabling act's express or implied legislative policies; (2) whether there is

substantial evidence in the record to support the findings on which the agency based its action; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made on a showing of the relevant factors. *Campbell v. Department of Civil Serv.*, 39 *N.J.* 556, 562 (1963).

A useful calculus for the first prong of this agency review test, violation of express or implied legislative policies, is the inquiry whether the decision "was not premised upon a consideration of all relevant factors * * * [or conversely] a consideration of irrelevant or inappropriate factors." *State v. Bender*, 80 *N.J.* 84, 93 (1979) (guiding judicial supervision of an executive branch decision to admit a defendant to PTI).

In *Henry v. Rahway State Prison*, 81 *N.J.* 571 (1980), the Civil Service Commission (predecessor to the Merit System Board) was found to have acted arbitrarily in reducing a penalty from removal to a ninety-day suspension because it failed to consider a relevant factor, namely, the seriousness of a single instance of a State corrections officer's falsification of a report. Specifically, the Court found that the Commission failed to consider the seriousness of the officer's offense in the context of the prison setting, where order and discipline are necessary for safety and security. In other words, the Commission had failed to consider the effect on the environment of a State prison, and therefore on public safety itself, of a correction officer's falsifying a report. *Id.* at 580. "The falsification of a report can disrupt and destroy order and discipline in a prison." *Ibid.*

The Warren case was primarily tried as a "neglect of duty" infraction that resulted in the escape of four prisoners under the officer's supervision. The prisoners were detained in a special, independently-functioning unit of the Trenton State Prison. The unit is designed to house prisoners suffering from medical problems that require their separation from the general prison population. Some of the inmates are terminally ill.

Consequently, in a humane gesture, the Department of Corrections has relaxed some of the ordinarily prevalent restraints against prisoner movement within the unit; namely, inmates in the unit have complete access to recreational areas from 8:00 a.m. till 10:00 p.m. However, the unit originally was designed to be a maximum-security unit.

When a "Code 99" report signaling an escape is broadcast, prison officers are dispersed throughout the prison and armed guards surround the entire institution. All access doors are automatically locked and the corrections officers take a "standing count" of the inmates in their cells. Once all inmates are accounted for, the count is "cleared" and the prison returns to normal operation.

However, because Warren's unit operated separately from the prison, the 9:18 p.m. "Code 99" was cleared without accounting for the inmates under his supervision. Warren was not aware of the "Code 99" report because the intercom in the unit was broken. Thus, due to the fact that the "Code 99" was cleared after all prisoners in the main prison were accounted for, the actual discovery of the escape did not occur until Officer Warren took a head count sometime after 10:00 p.m. After the escape, the Board reviewed the overall-security measures in the unit supervised.

Of course, the allegations embraced the fact that Warren had at first misrepresented what he observed in the hours before the break and that he had called in to report falsely that he had made a required 10:00 p.m. prisoner count. As to the first count, Warren said that he must have been mistaken about what he had seen, and, as concerning the second count, that he intended immediately to complete the 10:00 p.m. check. But, as noted, Warren's unit.had never been informed that at 9:18 p.m. a "Code 99" report of an escape had been sounded in other units of the prison complex.

The Board expressed concern over the procedural posture of the case, namely, whether it was a neglect of duty case or a

falsification of report case. It did, however, believe that it had adequately considered "Mr. Warren's conduct in failing to conduct the 10:00 p.m. count before calling in his report." It thus asserts that it did consider "all relevant factors." *Bender, supra,* 80 *N.J.* at 93. A majority of the Appellate Division panel affirmed the Board's recommendation of suspension, as opposed to removal. The dissent argued that Warren's lies concerning the 9:30 and 10:00 p.m. body counts and his failure to discover the escaped prisoners for almost an hour should result in his removal.

█ In the context of this case, we are satisfied to affirm the majority disposition of the Appellate Division that a period of suspension is not a penalty that could not reasonably have been imposed on a showing of the relevant factors. *Campbell v. Department of Civil Serv., supra,* 39 *N.J.* at 562. In the clearer context of a corrections officer's trial for intentional falsification of a report, there can be no doubt that the Board must consider this as an offense striking at the heart of discipline within the corrections system. Failure to accord due consideration to that factor in the prison setting would violate implied legislative policies regarding prison security.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.