760 A.2d 1148 (2000)
335 N.J. Super. 45
In the Matter of Kevin HALL.
Superior Court of New Jersey, Appellate Division.
Submitted October 25, 2000.
Decided November 9, 2000.
Caryl M. Amana, for appellant City of Camden.
Quinlan, Dunne & Daily, Merchantville, for respondent Kevin Hall (Timothy J.P. Quinlan, of counsel; Patricia M. Nigro, on the brief).
John J. Farmer, Jr., Attorney General, for respondent Merit System Board (Elizabeth M. Laufer, Deputy Attorney General, on the statement in lieu of brief).
Before Judges KING, COBURN and AXELRAD.
The opinion of the court was delivered by COBURN, J.A.D.
The City of Camden dismissed Police Officer Kevin Hall for conduct unbecoming an employee in the public service. On his appeal, the Merit System Board found that Hall had engaged in criminal behavior which it concluded was misconduct in office and a breach of the public trust. Nonetheless, instead of affirming the dismissal, the Board found that the appointing authority's action in removing Hall was not justified and, instead, imposed a fifteen-day suspension. Camden appeals, contending that the Board's action was arbitrary and capricious. We agree and therefore reverse and remand for entry of an order dismissing Hall from the Camden Police Department. We reverse, as well, the Board's determination awarding Hall back pay and benefits.

I
The now undisputed facts show that on May 18, 1995, a Camden police sergeant stopped an unlicenced driver operating an unregistered and uninsured motor vehicle bearing fictitious plates. The sergeant decided to impound the vehicle and ordered Hall to the scene with instructions to wait for a tow truck that would take the vehicle to a private lot operated under contract with Camden. Shortly after the vehicle was removed, Hall, who was then off duty, drove to the lot. Still wearing his uniform trousers, with his service revolver tucked into his front waistband and visible, Hall spoke to two employees at the lot and *1149 offered them $50 each for portions of the vehicle's stereo system. When he met with resistance, Hall said that in a couple of weeks he would "stop somebody else again" and "get what [he] want[s]." One of the employees told Hall that he could take the equipment if he agreed to sign a receipt for the property and change the police report so that it indicated that the equipment was not in the vehicle. Hall refused and left.

II
The Board found that Hall knew "that the vehicle was still the property of its registered owner and not the property of the impound lot. Yet, he attempted to negotiate a sale of vehicle parts, not with the registered owner, but with employees of the lot where the vehicle was placed for safekeeping." The Board also found that Hall wore his uniform pants and displayed his service revolver "as a clear attempt to intimidate the employees at the lot who may not have so readily agreed to `sell' the equipment to an unarmed private citizen without police powers." The Board added that it was "appalled ... [at the suggestion] that [Hall's] attempt to `purchase' the stereo equipment ... was not, in effect, a bribe or an attempt to steal."
Turning to the issue of punishment, the Board found that Hall had been a police officer for four and one-half years during which time he had amassed a record of "numerous minor and two major disciplines, including a fine equivalent to 10-days' pay for neglect of duty and a fine equivalent to 30 days' pay for violations of Department regulations for the handling of evidence, personal effects and other property taken into custody." There were seven adjudications of discipline between May 20, 1992, and February 23, 1995, the last being for a charge of chronic and excessive absenteeism. The Board noted that, on the other hand, Hall had received numerous commendations during his service as a police officer. Those commendations included "risking his life ... [by] enter[ing] a burning building to rescue an 18-month old child ..., and ... stopping a car implicated in a drive-by shooting, which resulted in the arrest of two individuals charged with murder."
The Board said that it recognized that Hall's "conduct is unacceptable and constitutes conduct unbecoming a public employee...." But based on the theory of "progressive discipline," the Board concluded that a fifteen-day suspension would suffice and would "serve as a warning to [Hall] that future offenses may result in more severe disciplinary action."

III
We begin our analysis with the recognition that "[c]ourts have a limited role in reviewing a decision of an administrative agency." Henry v. Rahway State Prison, 81 N.J. 571, 579, 410 A.2d 686 (1980). Reversal is only appropriate if the decision is "arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Id. at 580, 410 A.2d 686 (citing Campbell v. Department of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963)). If a penalty imposed by an agency is found to be arbitrary, the court may "finally determine the matter by fixing the appropriate penalty or remand it to the [agency] for redetermination." Henry, 81 N.J. at 580, 410 A.2d 686.
In the circumstances of this case, those principles dictate reversal of the reduction in punishment imposed by the Board and reinstatement of the dismissal ordered by Camden because the Board did not give sufficient weight to the seriousness of the offense committed by Hall or to his history of numerous disciplines, and because the Board's application of the principle of "progressive discipline" was inconsistent with the prior punishments imposed on Hall.
With respect to the issue of "progressive discipline," we note that the Board was aware that for two prior disciplinary *1150 infractions Hall had been subjected, in effect, to loss of pay for ten days and for thirty days. We note that he was assessed shorter loss-of-pay fines on five other occasions. Considering in particular the thirty-day loss-of-pay imposed on April 27, 1994, we fail to see how this suspension for only fifteen days amounts to progressive punishment.
Although the Board said that it recognized the seriousness of Hall's offense and its intentional and criminal nature, its punishment was inconsistent with that recognition. See; Henry, 81 N.J. 571, 410 A.2d 686; In re Warren, 117 N.J. 295, 566 A.2d 534 (1989); Rawlings v. Police Dept. of Jersey City, 133 N.J. 182, 627 A.2d 602 (1993); In re Cohen, 56 N.J.Super. 502, 153 A.2d 708 (App.Div.1959); Sabia v. City of Elizabeth, 132 N.J.Super. 6, 331 A.2d 620 (App.Div.1974); Bowden v. Bayside State Prison, 268 N.J.Super. 301, 633 A.2d 577 (App.Div.1993).
In In re Cohen, we considered and sustained the removal of a police officer who had committed various offenses involving the taking of money from parking meters. We said:
Every one of the acts referred to ... is of a nature which would tend to reflect upon and impair the morale of the police departmentin the case of the charges of solicitation of municipal employees to misappropriate parking meter collections, egregiously so. Adjudication of guilt of these latter charges alone would have made any punishment of defendant short of dismissal from the force unthinkable.

[56 N.J.Super. at 507-08, 153 A.2d 708 (emphasis added).]
In Sabia, we considered the appropriate discipline for police officers who "broke into the office shack at the premises used by the City to store abandoned automobiles, and stole therefrom a gallon container of paint and two radios." 132 N.J.Super. at 10, 331 A.2d 620. We said:
Employed to enforce the law and sworn to uphold the law, a police officer who breaks into a locked shack and steals personal property therefrom is guilty of blatant misconduct in his office and plainly violates his oath. [H]e merits the most stringent discipline.
....
[This activity] merited a penalty of nothing less than dismissal from the service....

[Id. at 11, 17, 331 A.2d 620.]
In Henry, the Supreme Court reviewed the punishment meted out by the Board's predecessor agency and found it wanting. Henry was employed as a prison guard and had filed a false report with respect to an investigation of narcotics trafficking at Rahway State Prison. The prison dismissed Henry and the agency reduced the penalty to a ninety-day suspension. On the prison's appeal, the Court reinstated the dismissal because the
falsification of a report can disrupt and destroy order and discipline in a prison. Even if motivated by good intentions, Henry subverted the discipline at Rahway State Prison by the deliberate falsification of his report. Consequently, the Commission was arbitrary, capricious and unreasonable in reducing the penalty imposed on Henry from removal to a 90-day suspension.

[81 N.J. at 580, 410 A.2d 686.]
In Warren, another prison guard case, the Supreme Court affirmed a ninety-day suspension order of the Board despite the employer's claim that its order of dismissal should have been affirmed because the case involved neglect of duty rather than intentional misconduct. On the other hand, the Court reiterated that intentional falsification of a report by a prison guard would require removal from office:
In the ... context of a corrections officer's trial for intentional falsification of a report, there can be no doubt that the Board must consider this as an offense striking at the heart of discipline within *1151 the corrections system. Failure to accord due consideration to that factor in the prison setting would violate implied legislative policies regarding prison security.

[117 N.J. at 299, 566 A.2d 534.]
In Bowden, we reversed the Board's reduction of punishment from dismissal to a six-month suspension because the "violation of rules barring relationships of familiarity and dealings between corrections officers and inmates would seem to us to be conduct which the system cannot safely tolerate." 268 N.J.Super. at 306, 633 A.2d 577.
And in Rawlings, the Supreme Court sustained the Board's dismissal of a police officer who refused to submit to a drug test when his supervisor had reasonable suspicion to believe that he had used drugs. 133 N.J. at 197, 627 A.2d 602.
Hall's conduct in this case was at least as egregious as that of the employees dismissed in the cited cases. While wearing part of his police uniform and displaying his service revolver, he offered money to the employees at the impound lot to steal property from the owner's motor vehicle, which he knew had just been brought there for storage and safekeeping at the direction of the police. Although he was unsuccessful, he was clearly guilty of attempted theft. N.J.S.A. 2C:20-3a; N.J.S.A. 2C:5-1. Further, the offense was a crime of the third-degree since Hall knew the taking would have involved the employees in a breach of their fiduciary obligation to the owner and to Camden. N.J.S.A. 2C:20-2b(2)(e). The offense was aggravated by the officer's statement to the employees that if they would not sell him the property, he would stop some other driver and get what he wanted, thus indicating his intent to commit another crime.
Considering the circumstances of this intentional offense and Hall's prior record of repeated infractions, which the Board cited but substantially ignored, see State-Operated Sch. Dist. v. Gaines, 309 N.J.Super. 327, 333, 707 A.2d 165 (App.Div.1998), we are satisfied that the Board's action in reducing the penalty from removal from office to fifteen days' suspension was arbitrary, capricious, unreasonable, and unsupported by the record. Neither the City of Camden nor its citizens should be obliged to maintain a thief as an officer of the law.
Reversed and remanded for entry of an order dismissing Hall from his position and vacating the award of back pay and benefits.