**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3580-17T3

IN THE MATTER OF
EUGENE R. ROYSTER AND
KATE BLASZKOWSKI,
BURLINGTON COUNTY.

_____

Argued June 4, 2019 – Decided July 9, 2019

Before Judges Suter and Enright.

On appeal from the New Jersey Civil Service Commission, Docket Nos. 2018-1000 and 2018-1003.

Mark W. Catanzaro argued the cause for appellants Eugene R. Royster and Kate Blaszkowski.

Primitivo J. Cruz argued the cause for respondent Burlington County (Malamut & Associates, attorneys; Andrew C. Rimol, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Eugene R. Royster and Kate Blaszkowski appeal the April 6, 2018 final agency decision of the Civil Service Commission (Commission) that affirmed the termination of their employment as Burlington County Corrections Officers. They do not dispute that on two separate dates, they failed to perform security tours in the I-Wing of the Burlington County Detention Center (Jail) where they were assigned, and then falsely entered in the Jail's logbook that they performed the tours. Instead, they contend they should have been suspended and not removed because others with similar infractions were not terminated. We affirm the Commission's decision.

In July 2017, the Jail's video surveillance tapes were reviewed as part of an investigation ordered by the warden following the death of an inmate in I-Wing, and a report was prepared.[1] Comparison of the videotapes with the Jail's logbook showed that on June 3, 2017, Officer Royster recorded that he made three security tours of the I-Wing he did not make. On July 1, 2017, he recorded five security tours he did not make. On June 3 and July 1, 2017, Officer Blaszkowski was assigned to the I-Wing to provide relief to other officers when they went on break. She recorded one false entry on June 3, 2017, for a security

_____

[1] There is no allegation that appellants were involved with that incident. Rather, it prompted an investigation that yielded additional issues.

tour she did not make. On July 1, 2017, she recorded two security tours she did not actually perform. Neither officer had a history of disciplinary infractions. Both were longstanding employees.

The County's preliminary notices of disciplinary action sought removal of both officers and charged them with incompetency, inefficiency or failure to perform duties; inability to perform duties; conduct unbecoming a public employee; neglect of duty; and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(1), (3), (6), (7), and (12). The "other sufficient cause" charge alleged specific violations of the Jail's Policy and Procedures Manual (Manual).[2] Appellants were terminated from service following departmental hearings and issued final notices of disciplinary action. Their appeals to the Commission were transmitted to the Office of Administrative Law for a hearing.

Administrative Captain Matthew Leith testified he reviewed the findings from the investigative report and compared those to the Jail's videotapes. These showed discrepancies between the security tours performed by Royster and Blaszkowski and what they recorded in the logbooks. I-Wing was for persons newly committed to the Jail. Leith testified that "[t]he first 48 hours tend[ed] to

---

[2] This included sections 1007, 1023, 1030, 1031, 1038, 1065, 1066, 1172, 1190, 1192 and 1250.

be the most dangerous for inmates" because there was a higher suicide rate. In I-Wing, the officers did not have the ability to see inside all the cells because of the manner in which it was configured. Officers needed to enter the tier to see what was going on inside the cells.

Security tours were required by the Jail's Manual to be performed "approximately every thirty . . . minutes at irregular intervals." Leith testified the purpose of the logbook was "to have an official record of what took place on that tier on that day."

Royster explained he did not do the security tours because he "just got comfortable." Blaszkowski did not do them because she was "too relaxed." Both testified they understood the importance of doing them, that they were important to the safety and security of the Jail, and they were one of the primary responsibilities of a correction officer. They also understood it was important to maintain an accurate logbook.

The administrative law judge's (ALJ) initial decision affirmed the County's decision to remove the officers from their positions. Neither officer had performed all of the required tours. Each made false entries in the logbook to indicate they performed the security tours. Finding that there was no fixed penalty imposed "when the charges involve[d] corrections officers who

neglect[ed] their assigned duty and falsif[ied] records in order to make it appear that they have performed the duty," the ALJ concluded that "removal [was] fully warranted" in this case. The ALJ distinguished other cases cited by appellants, finding "no legal basis . . . for 'disparate treatment' as that term is defined" and recommended termination from their positions.

The Commission accepted and adopted the ALJ's findings of fact and conclusions of law, following its "independent evaluation of the record." On appeal from the Commission's decision, appellants allege that their disparate treatment should preclude removal. They complain they were treated differently than others who were similarly situated in the same building and in the State in general. They also argue the ALJ was pre-disposed to removal and relied on his personal views about the punishment.

The scope of our review of an administrative agency's final determination is limited. In re Carter, 191 N.J. 474, 482 (2007). We will not interfere with an agency's final decision unless it is "arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980); see Russo v. Bd. of Trs., PFRS, 206 N.J. 14, 27 (2011). We "accord substantial deference to an agency head's choice of remedy or sanction . . . ." In re Herrmann, 192 N.J. 19, 34-35 (2007)

(quoting Div. of State Police v. Jiras, 305 N.J. Super. 476, 482 (App. Div. 1997)). We have applied such deference when reviewing determinations of the Commission, or of its predecessor agencies that have administered the civil service laws. See, e.g., Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562, 578 (1963); Falcey v. Civil Serv. Comm'n, 16 N.J. 117, 125 (1954); In re Sheriff's Officer, 226 N.J. Super. 17, 21 (App. Div. 1988). "[P]rogressive discipline is not a necessary consideration when reviewing an agency head's choice of penalty when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position . . . ." Herrmann, 192 N.J. at 33. The question is "whether such punishment is 'so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness.'" Carter, 191 N.J. at 484 (quoting In re Polk License Revocation, 90 N.J. 550, 578 (1982)).

"[F]alsification of a report can disrupt and destroy order and discipline in a prison." Henry, 81 N.J. at 580. In Henry, a corrections officer falsified a report so he could continue his own investigation of drug trafficking in the prison. Id. at 574. Although the Department of Corrections ordered Henry's removal from employment for this, the Commission reduced the penalty to a suspension. Ibid. The Court remanded to the Commission to re-determine the

penalty to be imposed, noting that the deliberate falsification of the report "[e]ven if motivated by good intentions . . . subverted the discipline at [the prison]." Id. at 580.

In the case of In re Warren, 117 N.J. 295 (1989), the Supreme Court reiterated this point. In Warren, the Court affirmed the suspension of a prison guard who did not make a head-count of the inmates but said that he did. Id. at 299. The Court noted that if the case were tried as an intentional falsification case, "the Board must consider this as an offense striking at the heart of discipline within the corrections system." Ibid. Not to do so "would violate implied legislative policies regarding prison security." Ibid.

We reject appellants' allegation that there was an inconsistency between Henry and Warren. Warren was tried primarily as a neglect of duty case rather than an intentional falsification case. In that context, the Court said "a period of suspension is not a penalty that could not reasonably have been imposed on a showing of the relevant factors." Ibid.

Appellants' argument that they were treated unfairly or disparately rests on unreported cases with no precedential value. See R. 1:36-3 (providing that "[n]o unpublished opinion shall constitute precedent or be binding upon any court"). We reject appellants' arguments because they have cited no binding

A-3580-17T3

authority to support them. Even if we were to consider their arguments, the cases cited all are distinguishable.

Appellants also allege unfair treatment because they contend a lieutenant and a sergeant at the Jail were not disciplined for similar conduct. With respect to the lieutenant, there was nothing in the record about falsification nor was the record clear on whether all the tours were performed because the record was incomplete. With respect to the sergeant, the record served only to raise issues; while appellants argued the sergeant had not performed a tour, a claim that the sergeant questioned, that record also was incomplete. The ALJ observed that it was "unclear exactly what the appointing authority understood about [the sergeant's or lieutenant's] on duty conduct vis-a-vis their own inspection requirements at the time in question." We agree that appellants did not show the Commission was arbitrary, capricious or unreasonable in its decision to terminate appellants' employment based on this record.

Appellants did not prove disparate treatment. "The conscious exercise of some selectivity in enforcement is not a constitutional violation unless the decision to prosecute is based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Twp. of Pennsauken v. Schad, 160 N.J. 156, 183 (1999) (citing Oyler v. Boles, 368 U.S. 448, 456 (1962)).

"Disparate treatment is demonstrated when a member of 'a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion' under the antidiscrimination laws." Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 74 (App. Div. 2004) (quoting EEOC v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir. 1990)). Appellants did not allege or show that they were part of a protected group or singled out on that basis. They simply have failed to demonstrate a prima facie case of disparate treatment.

Appellants raise concerns that the ALJ may have been biased in favor of their termination. This argument provides appellants no avenue of relief, however, because the Commission's final agency decision said that it made an independent evaluation of the record in reaching its conclusion; there was no allegation the Commission was biased. In addition, our review of the record showed no objectively reasonable basis to believe "a reasonable, fully informed person [would] have doubts about the judge's impartiality[.]" P.M. v. N.P., 441 N.J. Super. 127, 145 (App. Div. 2015) (quoting DeNike v. Cupo, 196 N.J. 502, 517 (2008)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3580-17T3