**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5650-17T2

RUBEN MARQUEZ,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
SRA ASSOCIATES, INC.,
and RED WHITE AND BLUE
THRIFT STORE,

     Respondents.

_____

Submitted September 10, 2019 – Decided September 19, 2019

Before Judges Yannotti and Hoffman.

On appeal from the Board of Review, Department of Labor, Docket No. 149,178.

Ruben Marquez, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Daniel Pierre, Deputy Attorney General, on the brief).

Respondents SRA Associates, Inc., and Red White and Blue Thrift Store have not filed briefs.

PER CURIAM

Ruben Marquez appeals from a final decision of the Board of Review (Board), which determined that he is liable for a refund of $12,796 in unemployment benefits that were erroneously paid to him. We affirm.

The record shows that Marquez was employed by Red White and Blue Thrift (RWB Thrift) for three years, during which time Marquez earned an average gross weekly salary of $481.67. RWB Thrift terminated Marquez's employment, effective June 26, 2017, and he filed a claim for unemployment benefits. On his claim form, Marquez identified two employers: SRA Associates, Inc. (SRA) and RWB Thrift.

The Division of Unemployment (Division) in the State's Department of Labor and Workforce Development (Department) determined that Marquez worked seventy-five weeks at SRA and earned $60,697.54. He also worked fifty-two weeks at RWB Thrift and earned $25,047. Based on those earnings, the Division found that Marquez's weekly benefit rate was $677, and his maximum benefit amount was $17,602.

In April 2018, the Division found that Marquez had been paid a greater amount in benefits than he was legally entitled to receive. It decreased his

weekly benefit rate to $289, and determined that his maximum benefit amount was $7514. The Division informed Marquez he was liable to repay $12,796. Marquez filed an administrative appeal, seeking review of the Division's decision by the Appeal Tribunal.

On May 24, 2018, an appeal examiner conducted a hearing in the matter. A representative from SRA testified that Marquez never worked for SRA, and she was not aware that SRA had reported earnings under Marquez's social security number. Marquez conceded that he never worked for SRA. He testified that he worked forty hours per week for RWB Thrift and earned about $12 per hour. He stated that while he worked at RWB Thrift, he never earned $677 gross per week.

Marquez acknowledged that he was paid $677 per week in unemployment benefits, but said he "had no idea anything was wrong." He claimed that when he submitted his claim for unemployment benefits, he only listed RWB Thrift as his employer and he did not know "how this mix up occurred . . . ."

The Appeal Tribunal issued a decision, which was mailed on May 24, 2018. The appeal examiner found that Marquez was liable for a refund of $12,796 because he had been paid more than he was legally entitled to receive. The examiner noted that Marquez never advised the Division he did not work

A-5650-17T2

for both SRA and RWB Thrift, or questioned why he was receiving more in unemployment benefits than he earned while he was working. The examiner concluded that, under the circumstances, the overpayment could not be "looked upon as an agency error."

Marquez appealed to the Board, which upheld the Appeal Tribunal's decision. This appeal followed. On appeal, Marquez does not dispute that he was overpaid benefits. Rather, he argues that the Board erred by ordering him to refund the overpayments. He also argues that he was not afforded an opportunity to be heard in the administrative proceedings.

The scope of our review in an appeal from a final determination of an administrative agency is strictly limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (citing Pub. Serv. Elec. & Gas Co. v. N.J. Dep't of Envtl. Prot., 101 N.J. 95, 103 (1985)). We may not disturb an agency's decision unless it is shown to be arbitrary, capricious or unreasonable. Ibid. (citing In re Warren, 117 N.J. 295, 296 (1989)).

We can intervene only "in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy." Ibid. (quoting George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994)). Moreover, "[i]n reviewing the factual findings made in an

unemployment compensation proceeding, the test is not whether [we] would come to the same conclusion if the original determination was [ours] to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Ibid. (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)).

It is well-established that "N.J.S.A. 43:21-16(d) requires the full repayment of unemployment benefits received by an individual who, for any reason, regardless of good faith, was not actually entitled to those benefits." Bannan v. Bd. of Review, 299 N.J. Super. 671, 674 (App. Div. 1997). Federal law requires states that receive federal funds for unemployment benefits to recover benefits that were improperly paid. Id. at 675 (citing 42 U.S.C. § 503(a)(9); Brewer v. Cantrell, 622 F. Supp. 1320, 1324 (D. Va. 1985), aff'd, 796 F.2d 472 (4th Cir. 1986)).

Moreover, the recovery of unemployment benefits that were paid in error "furthers the purpose of the unemployment compensation laws." Id. at 674 (citing Vasquez v. Horn, 181 N.J. Super. 529, 532-34, 539 (App. Div. 1981)). "The public interest clearly is not served when the Unemployment Trust Fund is depleted by the failure to recoup benefits erroneously paid to an unentitled recipient, however blameless he or she may have been." Ibid.

Here, there is sufficient credible evidence in the record to support the Board's decision to require Marquez to repay $12,796. It is undisputed that Marquez was paid $677 in weekly benefits, based on information that he was employed by both SRA and RWB Thrift. Testimony at the hearing before the Appeal Tribunal by Marquez and the SRA representative established, however, that Marquez was never employed by SRA, and Marquez was paid benefits he was not legally entitled to receive.

Marquez argues that the Board should not have ordered him to refund the benefits erroneously paid because the Division incorrectly entered his work history information and/or his social security number, which led to the overpayment of benefits. Marquez claims he never listed SRA as his employer on his claim, and asserts the Division has the responsibility to ensure the data entered in the system is accurate. However, even if Marquez did not state on his claim that he had two employers, and even if he received the benefits in good faith, he is still required to refund the overpayments. N.J.S.A. 43:21-16(d)(1); Bannan, 299 N.J. Super. at 674.

We note that at the hearing, Marquez asserted that because the error was not corrected and the payments continued for a long time, he should not have to return the overpayments. However, as the appeal examiner pointed out,

Marquez was paid $677 per week, which was more than the gross weekly salary he received while working at RWB Thrift. The examiner observed that it made no sense for an unemployment agency to pay a claimant more in benefits than he earned while he was working. Thus, the overpayments could have been minimized or avoided if Marquez had reported the overpayments promptly.

We also note that the administrative regulations authorize the Division to waive the recovery of erroneously-paid benefits in certain circumstances. N.J.A.C. 12:17-14.2(a) provides that recovery may be waived when (1) the claimant has died; (2) the claimant is disabled and no longer able to work; or (3) recovery "would be patently contrary to principles of equity," as determined by the Director, with the concurrence of the Controller of the Department.

When determining whether the recovery of any overpayment "would be patently contrary to the principles of equity," the Director and the Controller must consider whether "the terms of a reasonable repayment schedule would result in economic hardship to the claimant." N.J.A.C. 12:17-14.2(d). Here, Marquez did not seek a waiver of the repayment obligation. In any event, there is no evidence in the record showing he would meet the criteria in N.J.A.C. 12:17-14.2(a).

A-5650-17T2

Marquez also argues he was not afforded the opportunity to defend himself or speak before the Appeal Tribunal or the Board. As we have explained, however, the Appeal Tribunal conducted an evidentiary hearing in this matter and Marquez testified in that proceeding. He also availed himself of the right to appeal the Appeal Tribunal's decision to the Board, and provided the Board with a letter explaining his position. Therefore, Marquez was afforded a full and fair opportunity to be heard on his appeal, both before the Appeal Tribunal and the Board.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5650-17T2