**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1827-18T3

TONI BELFORD DAMIANO,

  Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and NICOLE A. CASCIOLA,

  Respondents.

_____

    Argued December 18, 2019 – Decided January 16, 2020

    Before Judges Whipple, Gooden Brown, and Mawla.

    On appeal from the Board of Review, Department of Labor, Docket No. 151,599.

    April M. Gilmore argued the cause for appellant (The Epstein Law Firm, PA, attorneys; April M. Gilmore, of counsel and on the briefs; Jeffrey B. Richter, on the briefs).

    Sean Patrick Havern, Deputy Attorney General, argued the cause for respondent Board of Review (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster,

Assistant Attorney General, of counsel; Aimee Blenner, Deputy Attorney General, on the brief).

Respondent Nicole A. Casicola has not filed a brief.

PER CURIAM

Appellants Toni Belford Damiano and Damiano Law Offices (collectively Damiano) challenge a December 5, 2018 Board of Review decision granting Nicole Casciola unemployment benefits under N.J.S.A. 43:21-5(a). We affirm.

Damiano employed Casciola as a full-time associate attorney from 2004 to 2006, and 2009 to 2011. In May 2011, Casciola requested to work part-time after the birth of her first child. Damiano offered her a three-days-per-week work schedule from 9:30 a.m. to 4:30 p.m., for a reduced salary. These terms were documented in a written employment contract, which was subject to review every six months.

In 2016, Casciola became pregnant a second time. In April 2017, before she returned from maternity leave, she met with Damiano and requested a pay increase. Damiano advised Casciola all part-time positions were phasing out as a result of the firm's business needs, but the firm had a full-time position for her. She also advised Casciola's transition to a full-time schedule need not be immediate, and suggested Casciola return on a full-time basis after Labor Day, in approximately five months. Casciola stated she needed more time and

Damiano agreed, allowing her to work part-time through the end of 2017. Casciola also received a raise in her part-time pay.

Casciola returned to work part-time in May 2017, and in July 2017, informed Damiano she was pregnant with her third child. Damiano permitted Casciola to work part-time through the end of 2017, in accordance with their agreement. In a September 2017 letter, Damiano advised Casciola that when she returned from maternity leave, a full-time position would be waiting for her. In an October 2017 email, Casciola asserted she felt pressured to make a decision because Damiano offered her a full-time position knowing her childcare arrangements would not permit her to accept it.

Casciola started her third maternity leave on December 15, 2017, and thereafter applied for temporary disability benefits commencing the same date. During maternity leave, Casciola paid her attorney registration fees for 2018, which she submitted as a Damiano employee. Her maternity leave and temporary disability benefits exhausted on February 16, 2018, but she received additional bonding time benefits until April 16, 2018. Via email dated April 20, 2018, Casciola informed Damiano she was resigning because her part-time position was eliminated, and she considered herself terminated. Casciola then applied for unemployment benefits on April 22, 2018.

 A-1827-18T3

The Deputy Director determined Casciola was eligible for benefits, but Damiano appealed, arguing she left work voluntarily without good cause attributable to the work. The Appeal Tribunal conducted a telephonic hearing in which both parties participated, and issued a written decision disqualifying Casciola for benefits under N.J.S.A. 43:21-5(a), as of April 15, 2018. The Tribunal found

> [Damiano] was very flexible and understanding enough to initially allow [Casciola] to work on a part-time basis due to [her] personal circumstances. . . . While it is . . . clear that [Damiano] gave [Casciola] the freedom to continue working part-time for the following six-plus years, their decision to have [Casciola] return to her initial terms of re-hire as a full-time attorney was for a very compelling and understandable reason, specifically due to the business needs of the law firm. It is quite apparent that [Casciola] never had intentions of returning to work. As [Casciola] rejected the employment terms of her full-time position due to a lack of child care, this is a personal circumstance, unrelated to the working conditions. Hence [Casciola] left work voluntarily without good cause attributable to the work and is disqualified for benefits . . . .

Casciola appealed from the Tribunal's decision. The Board's decision adopted and affirmed the findings of the Tribunal but held Casciola had good cause to leave the job and was not disqualified from receiving benefits. The Board likened Casciola's case to Utley v. Bd. of Review, 194 N.J. 534 (2008),

4

where the employer changed the terms and conditions of employment by changing the hours the claimant had to work which caused the claimant a problem getting to work due to transportation issues. . . .

In the case before us, the separation occurred because [Damiano] changed the conditions of employment by eliminating her part time position due to business needs. [Casciola] could not work full time based on her child care responsibilities. As [Damiano] changed the conditions of [Casciola's] employment, her leaving work for personal reasons becomes attributable to the work and gives her good cause for leaving work and no disqualification arises under N.J.S.A. 43:21-5(a).

## I.

The scope of our review of an administrative agency's final determination is strictly limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (citation omitted). "If the Board's factual findings are supported 'by sufficient credible evidence, courts are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Review, 91 N.J. 453, 459 (1982)). The agency's decision may not be disturbed unless shown to be arbitrary, capricious, or unreasonable or inconsistent with the applicable law. Ibid.; In re Warren, 117 N.J. 295, 296 (1989). Thus, "[i]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the

fact finder could reasonably so conclude upon the proofs." Ibid. (alteration in original) (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)).

On appeal, Damiano argues the Board misapplied Utley because there, the claimant did everything possible to keep his job, whereas Casciola failed to secure childcare, request more time to obtain childcare, or explain why she could not work full-time. Damiano argues the Board's decision disregarded the evidence and facts the Tribunal developed and ignored case law where employees who made personal decisions not to return to work were denied benefits.

II.

> New Jersey's Unemployment Compensation Law . . . is social legislation that provides financial assistance to eligible workers suffering the distress and dislocation caused by unemployment. Provident Inst. for Sav. v. Div. of Emp't Sec., 32 N.J. 585, 590 (1960). In passing the Compensation Act . . . the Legislature declared that "economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state [and] . . . often falls with crushing force upon the unemployed worker and his family." N.J.S.A. 43:21-2. In essence, "the purpose of the [Compensation Act] is to provide some income for the worker earning nothing, because he is out of work through no fault or act of his own . . . ." Battaglia v. Bd. of Review, 14 N.J. Super. 24, 27 (App. Div. 1951); see also Yardville Supply Co. v. Bd.

6

of Review, 114 N.J. 371, 375 (1989). "[T]o further its remedial and beneficial purposes," we have recognized that "the [Act] is to be construed liberally in favor of allowance of benefits." Yardville Supply Co., 114 N.J. at 374; see also Provident, 32 N.J. at 590.

[Utley, 194 N.J. at 543.]

Under N.J.S.A. 43:21-5(a), an employee is disqualified from receiving benefits if "the individual has left work voluntarily without good cause attributable to such work." "Claimants bear the burden of proof to establish their right to unemployment benefits. Furthermore, when an employee leaves work voluntarily, he bears the burden to prove he did so with good cause attributable to work." Brady, 152 N.J. at 218 (internal citations omitted); see also Morgan v. Bd. of Review, Div. of Emp't Sec., 77 N.J. Super. 209, 213 (App. Div. 1962).

Leave is voluntary only when an employee intends to leave his job. Campbell Soup Co. v. Bd. of Review, 13 N.J. 431, 435 (1953). "[W]hile the statute does not define 'good cause,' our courts have construed the statute to mean 'cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed.'" Domenico v. Labor & Indus. Dep't Review Bd., 192 N.J. Super. 284, 287 (App. Div. 1983). "[T]he test is one of ordinary common sense and prudence," and the decision to leave "must be compelled by real, substantial and reasonable circumstances, not

imaginary, trifling and whimsical ones." Id. at 288. The employee must do what is necessary and reasonable to remain employed. Ibid.

If the facts support the good cause is attributable to work and not personal reasons, the claimant is entitled to unemployment benefits. Utley, 194 N.J. at 551. Moreover, "an individual who leaves work for several reasons, one of which constitutes good cause attributable to such work, shall not be disqualified for benefits." Id. at 550.

In Utley, a disabled employee, incapable of driving, relied on public transportation to commute to work. Id. at 538-39. His employer unilaterally changed his work and mandatory overtime schedule to times outside his bus route's schedule. Ibid. The employee's supervisor and then his co-worker transported him to work, however, they could not continue to do so. Ibid. Ultimately the employee quit and applied for unemployment benefits. Id. at 539. The Supreme Court found the employee satisfied his burden under N.J.S.A. 43:2-5(a) and quit his job for good cause attributable to his work. Id. at 544-45. The Court reasoned even though Utley's commute was a personal problem, the employer altered the terms and conditions of the employment, which set in motion a chain of events leading to the worker's inability to come to work. Id. at 544-46.

The same is true here. Casciola was working part-time when Damiano unilaterally changed the conditions of her employment by eliminating her part-time position and offering her a full-time position Casciola could not fulfill. Damiano's actions set into motion a chain of events leading to Casciola's inability to work due to the change in hours, as was the case in <u>Utley</u>. Indeed, Casciola testified she left the job because of the "childcare and the hours . . . [and] it wasn't . . . the job that [she] had maintained for seven years." Her reasons were entirely plausible considering she had three young children in her care. Therefore, while one of the links in the chain concerned Casciola's personal reasons for leaving her employment, namely, childcare arrangements, the catalyst of her departure was the permanent elimination of her part-time position.

For these reasons, the Board did not misconstrue <u>Utley</u> or ignore the facts the Tribunal adduced. In view of the deference we owe to the Board, its decision to grant Casciola unemployment benefits was not arbitrary, unreasonable, or capricious.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9