**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0694-19

HILLARY HEIDEL,

    Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR and
MAURICE RIVER TOWNSHIP,
BOARD OF EDUCATION,

    Respondents.

_____

Submitted December 14, 2020 – Decided February 11, 2021

Before Judges Rothstadt and Mayer.

On appeal from the Board of Review, Department of Labor, Docket No. 157,602.

Zeller and Wieliczko, LLP, attorneys for appellant (Dean R. Wittman and Eric T. Romanowski, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Jane C. Schuster, Assistant Attorney General, of counsel; Ryan J. Silver, Deputy Attorney General, on the brief).

Frank DiDomenico, attorney for respondent Maurice River Township Board of Education.

PER CURIAM

Hillary Heidel appeals from the Board of Review's (Board) May 5, 2019 final agency decision concluding she did not qualify for unemployment benefits because under N.J.S.A. 43:21-4(g)(1) she had a reasonable assurance of continuing re-employment. On appeal, Heidel contends that the Board's decision was arbitrary, capricious, unreasonable, and unsupported by substantial credible evidence. She also avers that the Board's credibility determinations were unsupported or "directly contradicted by" her employer's "assertions and misrepresentations." In the alternative, she contends that if we determine that she had reasonable assurances of re-employment, she is entitled to "an offset of reimbursement" that the Board did not provide her. Finally, she contends that on appeal, she is entitled to an award of attorneys' fees and costs under N.J.A.C. 1:12-5.1(b). For the reasons that follow, we affirm.

In September 2017 the Maurice River Township School District Board of Education (BOE) employed Heidel as a long-term substitute teacher under a contract that was to expire at the end of June 2018. Early in the school year, the school's principal asked Heidel if she would be interested in a similar position

during the subsequent school year. Although Heidel expressed interest she was not provided with any further details.

When a fulltime teacher's maternity leave was confirmed, the BOE offered Heidel employment as that teacher's substitute from April 2018 through October 2018. The BOE approved the contract with Heidel at its March 20, 2018 meeting.

According to the BOE, on April 16, 2018, its representative wrote to Heidel to advise that the BOE had approved her hire to fill the maternity leave position beginning April 21, 2018, through October 28, 2018. The letter further advised that a contract to cover that term was being prepared and that Heidel would be contacted when it was completed. According to Heidel, she never received the letter and never went to the school to obtain the contract.

On July 1, 2018, Heidel applied for unemployment benefits for the period beginning that date through September 8, 2018. In response, a Deputy Director of the Department of Labor determined that Heidel was ineligible for benefits because she had "a contract or reasonable assurance of performing such services for an educational institution or educational service agency in the following year or term." Heidel filed a notice of appeal from that determination and the matter was scheduled for a telephonic hearing on August 28, 2018 before the Appeal

A-0694-19

Tribunal. Heidel participated in the hearing but no representative of the BOE appeared. Based on her testimony and the documents considered by the Appeal Tribunal, it issued a decision on August 29, 2018, finding that she was not ineligible as she did not have a reasonable assurance of re-employment. For that reason, the Appeal Tribunal reversed the initial determination of the Deputy Director.

The BOE appealed to the Board, noting that it had not received notification of the hearing it did not attend until October 3, 2018. In their letter to the Board, it set forth the reasons why the BOE disagreed with the Appeal Tribunal determination. Initially the Board issued a decision finding that the BOE did not establish good cause for not participating at the hearing, but later reversed itself after considering additional information it had not received earlier. On December 13, 2018, the Board ordered that its earlier decisions be set aside, and the matter be reopened and remanded to the Appeal Tribunal for a new hearing.

At the second hearing the Appeal Tribunal conducted on March 5, 2019, Heidel and the BOE's representatives, Patricia I. Powell and Sandra D. Nash participated and testified. At the commencement of the hearing, the Appeal Examiner summarized Heidel's testimony from the first hearing. According to

that summary, Heidel established that she originally began working in September 2017 and her last day of work was June 23, 2018, and that she was employed as a long-term substitute teacher under an employment contract. Pursuant to that contract she was to receive compensation through June 30, 2018. After the contract was concluded, "no one had told [Heidel] she would not be returning to work. She was not on a substitution list."

The Appeal Examiner then turned to a statement from Heidel that was admitted during the first hearing. According to that statement, "no contract had been issued to solidify the potential position which is six weeks in length and potentially no promise of further employment."

The Appeal Examiner then gave Heidel an opportunity to provide additional testimony. In response, she reiterated that she was not notified that she would be employed in September, only that "there may be a . . . position open." Whatever information she received came from the school principal. Heidel denied receiving any notification at any time after June 30th about a position.

The Appeal Examiner also addressed the evidence that had been submitted by Heidel. Among the documents were copies of text messages that she received from the teacher who was going to be on leave. In those text messages, the

teacher described that her leave period would consist of partial weeks of employment and that she "wanted to give [Heidel] the first dibs" at the position. In response, Heidel texted that she was "only interested in the long-term."

Heidel then reiterated that she "never heard from the administration" about the job. She disputed statements that were made by Powell in her written submission that stated that Powell had left phone messages for Heidel who claimed that was impossible because her voice mailbox was full. Heidel also denied having any conversations with Nash during the summer of 2018 about her position being available from April 21, 2018, through October 28, 2018, and that she would be returning on September 17, 2018.

When Nash testified, she confirmed that Heidel was assured employment through June 23, 2018. She also confirmed the accuracy of the existing contract for the position that ran through that date. She testified that the April 16, 2018 letter was mailed to Heidel by first class mail and the BOE did not receive anything back indicating it was sent to an incorrect address or was not received.

Nash then described a meeting in the summer when Heidel was concerned about her unemployment claim being denied. According to Nash, Heidel inquired as to why the BOE indicated to the Division of Unemployment that Heidel was coming back to work in September. In response Nash "told her that

6

time that the Board has approved her long-term sub position to go through October of 2018 and that she would be starting September 17 of 2018 in a continuation of the long-term sub-position she had the previous school year." Moreover, contrary to the text messages from the teacher, Heidel's workdays would be Monday through Friday 8:30 to 3:30. Nash stated her conversation with Heidel was in the presence of Powell. She also testified she could not recall what if anything Heidel said in response.

During her cross-examination of Nash, Heidel pointed out that she had spoken to Nash during the summer when she came to look for Powell. However, she was informed that Powell was not available. She denied being told that she was returning to school in September and that she was told about further employment. She disagreed that Powell was a witness because she was not in the building when she "came in looking for her."

Powell then testified and confirmed that she did not have any conversations with Heidel about her employment prior to June 30, 2018 or during the summer. She did however mail the April 16th letter to Heidel. Although she recalled not having any conversations or contact with her, she did recall Heidel coming into the office in July. She saw her speaking to Nash, who "sits right outside of [Powell's] office," and heard Heidel speaking to Nash

7

"regarding her unemployment insurance." Powell heard Heidel ask Nash about the claim and Nash responding that "because she had an assurance of employment in September that she is between academic school years and ineligible for unemployment." Nash pointed out to Heidel that because her start date would not be until September 17th, Heidel should make an inquiry about unemployment benefits for the period between September 4th and September 17th.

According to Powell when Heidel did not show up in September, they had to "scramble to cover" the class. She was also aware that there were attempts made to contact Heidel, but she did not return phone calls.

Heidel then testified again as to her presence at the office in the summer of 2018. She confirmed that she spoke to Nash who sat directly in front of Powell's office. She believed Powell was not present. She also indicated that Nash did not respond to her questions but told her she needed to speak to Powell. Moreover, Nash did not give her any indication that she would have worked the following term.

On March 25, 2019, the Appeal Tribunal issued a decision again finding that Heidel was not ineligible for benefits as she did not have reasonable assurances of re-employment. The Appeal Tribunal found that Heidel was

contracted to be employed through June 30, 2018 and worked through that period. However, although she applied for a teaching position for the following term, she "was not on a substitute list with the employer." Citing to N.J.S.A. 43:21-4(g)(1), the Appeal Tribunal determined there were no reasonable assurances of employment. It also found that Heidel's testimony was "consistent, logical and deemed credible," she only worked for the one academic year and "she did not receive verbal or written notification work was available for the subsequent term."

The BOE appealed, primarily relying on the April 16, 2018 letter which it argued was ignored by the Appeal Tribunal. On May 3, 2019 the Board issued its final decision. In addressing the Appeal Tribunal's determination, the Board made additional findings. It stated the following:

> The Board of Education on March 20, 2018, approved the hiring of the claimant to cover a maternity leave from April 21, 2018 through October 28, 2018. In July 2018, the claimant talked to the employer after she received notice from the Division of her ineligibility for benefits on grounds of reasonable assurances of recall. The employer at that time explained to the claimant that she was denied unemployment benefits because work would be available for her in September 2018. On August 16, 2018, the teacher that was on maternity leave made the claimant aware of the availability of her position through October 26, 2018 when her maternity leave was scheduled to expire.

Based on that finding, the Board disagreed with the Appeal Tribunal's determination that Heidel did not have reasonable assurances. Primarily relying upon the fact that she spoke with her employer's representatives after the initial denial of her claim for benefits and citing to N.J.A.C. 12:17-12.4(a)(1), the Board found "there was an implied agreement of recall." For that reason, under N.J.S.A. 43:21-4(g)(1), Heidel was ineligible for benefits. This appeal followed.

The scope of our review of an administrative agency's final determination is strictly limited. Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). The agency's decision may not be disturbed unless shown to be arbitrary, capricious, or unreasonable or inconsistent with the applicable law. Ibid.; In re Warren, 117 N.J. 295, 296 (1989). "If the Board's factual findings are supported by 'sufficient credible evidence, courts are obligated to accept them.'" Brady, 152 N.J. at 210 (quoting Self v. Bd. of Rev., 91 N.J. 453, 459 (1982)). Thus, "[i]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the fact-finder could reasonably so conclude upon the proofs." Ibid. (alteration in original) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)).

A-0694-19

In our review, we also "give due regard to . . . the agency's expertise where such expertise is a pertinent factor." Clowes v. Terminix Int'l Inc., 109 N.J. 575, 587 (1988) (quoting Close v. Kordulak Brothers, 44 N.J. 589, 599 (1965)). "However, '[i]n appeal from a final agency decision, an appellate court is in no way bound by the agency's interpretation of the statute or its determination of a strictly legal issue.'" Melnyk v. Bd. of Educ. of Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020) (quoting Ardan v. Bd. of Rev., 231 N.J. 589, 604 (2018)).

N.J.S.A. 43:21-4(g)(1) provides in pertinent part, a person who performs instructional services to an educational institution:

> shall not be paid [unemployment compensation benefits] based on such services for any week of unemployment commencing during the period between two successive academic years . . . if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic year or terms.

Moreover, N.J.A.C. 12:17-12.4(a) provides that an employee of an educational institution is not eligible for benefits for any week that begins during the period between academic years or terms if the employee has a "reasonable assurance" of returning to work "in such capacity" in the succeeding academic year. The regulation states:

11

the term "reasonable assurance" of returning to work means a written, oral, or other implied agreement that the employee shall perform services in any such capacity during the next academic year, term, or remainder of a term. "Any such capacity" means the same or similar capacity and refers to the type of services provided, that is, a professional capacity as provided by N.J.S.A. 43:21-4(g)(1) or non-professional capacity as provided by N.J.S.A. 43:21-4(g)(2).

[Ibid.]

Applying these principles, we find no error in the Board's decision to deny benefits. The Board's findings were supported by the evidence in the record that it cited in its decision about the conversation that took place at the Board's office with Nash in July, as well as the August 2018 texts between Heidel and teacher for whom she was substituting. That evidence supported the Board's determination that Heidel received "reasonable assurances" of continued employment in September disqualifying her from being eligible for benefits. See Ibid. (including "oral" and "implied" agreements in definition of reasonable assurance); Patrick v. Bd. of Rev., 171 N.J. Super. 424, 425-27 (App. Div. 1979) (holding substitute teacher ineligible for benefits where she was approved by school board to be day-to-day substitute for the following school year but had previously served in a long-term substitute position); Schoenfeld v. Bd. of Rev., 163 N.J. Super. 584, 586-88 (App. Div. 1978) (holding teacher's aide ineligible

12

for unemployment benefits where there was an oral agreement she would return to work in the fall "providing nothing unforeseen happened.").[1]

As the Board's determination finding Heidel ineligible to receive unemployment benefits was supported by substantial credible evidence, we discern no basis to disturb that decision. The fact that the Board modified the findings of the Appeal Tribunal is of no moment as the Board acted within its authority. The Board is authorized by N.J.S.A. 43:21-6(e) to "affirm, modify or set aside any decision of an Appeal Tribunal." Von Ouhl v. Bd. of Rev., 254 N.J. Super. 147, 151 (App. Div. 1992).

We only add that the Appeal Tribunal's reliance on the fact that Heidel was not placed on the substitute list for the coming school year did not undermine the reasonable assurances given to her by the BOE's April 16, 2018 letter or her subsequent conversation with Nash. Whether a teacher is placed on a substitute list is not conclusive when determining whether reasonable assurances have been given for employment in the ensuing school year. See

---

[1] Although not discussed by the Board, we note that there exists a presumption of receipt of mail when it is sent by first class mail and there is no return of that mail or other indication that the addressee did not receive it. SSI Med. Servs., Inc. v. N.J. Dep't of Human Servs., 146 N.J. 614, 621 (1996) ("New Jersey cases have recognized a presumption that mail properly addressed, stamped, and posted was received by the party to whom it was addressed."). That presumption of course is rebuttable. Id. at 625.

Charatan, 200 N.J. Super. at 83-84; Patrick, 171 N.J. Super. at 426. Under N.J.A.C. 12:17-12.4(a)(2), "Reasonable assurance of recall does not exist when an individual performs full-time services under an annual contract and during the next academic year or term is offered day-to-day substitute work;" and under (a)(3), "An employee who is employed for all or part of a term in a day-to-day substitute position has reasonable assurance of recall if he or she is placed on a substitute list for the next academic year or term." Here, Heidel was originally employed as a long-term substitute teacher, not day to day, and she was not offered "day to day" substitute work for the new term.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0694-19