903 A.2d 1095 (2006)
387 N.J. Super. 305
William C. KLUSARITZ, Jr., Respondent-respondent/Cross-Appellant,
v.
CAPE MAY COUNTY, Petitioner-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 2006.
Decided August 7, 2006.
*1096 Stephen D. Barse, Vineland, argued the cause for appellant/cross-respondent (Farnoly & Barse, attorneys; Mr. Barse, on the brief).
William C. Klusaritz, respondent/cross-appellant, argued the cause pro se.
Julie D. Barnes, Deputy Attorney General, argued the cause for respondent New Jersey Merit System Board, (Zulima V. Farber, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Ms. Barnes, on the brief).
Before Judges COLLESTER, LISA and S.L. REISNER.
The opinion of the court was delivered by
COLLESTER, J.A.D.
Cape May County appeals the final administrative action of the Department of Personnel's Merit System Board (Board) following a disciplinary action the County brought against William C. Klusaritz, Jr., a principal accountant in the county treasurer's office. Following submission of charges and a departmental hearing in November 1997, the County issued a final notice of disciplinary action terminating Klusaritz for reasons of incompetency, inefficiency, inability to perform duties and incorrigibility. Klusaritz appealed to the Office of Administrative Law, and the matter *1097 was referred to an administrative law judge (ALJ), who conducted a twenty-one day hearing prior to making a decision.
The evidence presented at the hearing was that Klusaritz, a CPA, was hired on March 11, 1994. At that time the county treasurer was Pamela D. Eaves, who later was replaced by Edmund J. Grant, Jr. Subsequently, Eaves sued the County for violation of her civil rights and retaliation under the New Jersey Law Against Discrimination, and received a favorable verdict. See Eaves v. County of Cape May, 239 F.3d 527 (3d Cir.2001). Throughout this litigation Klusaritz has claimed that the disciplinary action against him was retaliation for his support of Eaves.
Grant testified that when he took over as county treasurer, the office was in "absolute chaos" with eighty recommendations and material weaknesses noted in the annual audit report. He assigned Jeanette Powers to oversee the accounting and auditing division, which included directly supervising Klusaritz. At the time Klusaritz was an appointed employee and subject to termination at will. Grant said he helped him obtain civil service status without observing his work in any detail. However, when Grant did so, he found significant problems in Klusaritz's preparation of bank reconciliations. One of Klusaritz's reconciliations made no sense to Grant and the independent auditor, even after Klusaritz tried to explain it. Grant said that problems with the bank reconciliations prepared by Klusaritz continued throughout his employment. He added that after Klusaritz was suspended, no one was hired to replace him, and the bank reconciliations were prepared satisfactorily by a non-CPA clerk typist. Both Powers, as Klusaritz's supervisor, and Kenneth W. Moore, the outside auditor, testified as to continued deficiencies in Klusaritz's bank reconciliations. Moore testified the reconciliations were incomprehensible and of no value. He discussed the deficiencies with Klusaritz, who said he would complete the work correctly. When this problem persisted, Moore wrote to Grant in October 1996, to thank him and his staff for cooperating with the annual audit, but added the following:
However, I would like to bring to your attention the work of one employee. William Klusaritz's work and schedules that were provided to Moore & Fitzpatrick were no clearer this year than last year. I made numerous [requests] for him to change the format of these schedules but to no avail. Numerous schedules were not available almost five months after the close of the year. I asked him to reconcile his information with the general ledger, [but] this could not be accomplished.
Moore said he did not mention any other employees in his letter because they made changes and corrections rather rapidly. However, Klusaritz's work product presented "an on-going problem."
Klusaritz testified that his bank reconciliations and other work for the County was satisfactory. He said that two of the reconciliations the County produced as evidence were either preliminary or complete fabrications designed to make him appear incompetent. He also claimed that other work he had prepared either was hidden or purposely destroyed by the County. He called witnesses to testify that he was a loyal and conscientious employee. Finally, he produced Steven J. Gabey, a CPA, to testify as an expert as to the quality of Klusaritz's work. Gabey stated that the work product he examined, including bank reconciliations, was competent and of professional quality. The ALJ supplied a written opinion of more than seventy pages in which he defined the County's contentions as follows: (1) Klusaritz failed to prepare bank reconciliations and outstanding *1098 check lists in an accurate and proper manner; (2) Klusaritz failed to prepare bank reconciliations in a timely manner; (3) Klusaritz failed to perform the duties of the position of principal accountant in the treasurer's office in a timely and proper manner; and (4) Klusaritz failed or refused to accept direction. He found that the County's proofs established these contentions with the exception of the charge that Klusaritz was not timely in presenting the bank reconciliations. He rejected Klusaritz's argument that he was a victim of a conspiracy or that the County destroyed or deliberately failed to produce documentation that would show he performed his job competently. He said that even by drawing an inference that missing documents would indicate satisfactory work, the documents which were produced showed that they were prepared in an "incomplete and unexplainable manner." He found that the proofs were contrary to Klusaritz's contention that he received no clear instructions about how his supervisor wanted him to prepare the bank reconciliations or perform other accounting work. The ALJ found the County's witnesses credible, especially Moore. He discounted Gabey's testimony, noting that bank reconciliations and other County financial data were to be understood not only by CPAs but also by elected and County officials, as well as the public. His conclusion was that
[A]ppellant is guilty of the charges ... alleging violations of N.J.A.C. 4A:2-2.3(a)(1) incompetence, inefficiency, or failure to perform duties, (a)(2) [i]nsubordination, and (a)(3) [i]nability to perform duties.
Addressing the applicable penalty, the ALJ held that although Klusaritz was "a very pleasant and sincere individual," a "conscientious employee" and a person who "took great pride in his work," and had no prior disciplinary record, the only appropriate disposition was his removal from his position.
[I]t must be recognized that appellant was appointed to function as an accountant, not to learn the duties as an accountant through on-the-job training. N.J.S.A. 11A:1-2(b) provides that it is the public policy of the State to provide public officials with appropriate appointment, supervisory and other personnel authority to execute properly their constitutional and statutory responsibilities. Thus, it is the obligation of respondent and its supervisory personnel to make certain that it has staff members who will devote their full attention to undertake and carry out the critical function of handling the finances of the County of Cape May.
In order to carry out this important function and the many tasks associated therewith, a governmental entity performing such critical duties on behalf of its citizenry has the right to expect that an employee will devote full attention to the performance of the duties and functions assigned to the employee. To permit employees to be incapable of carrying out the clear orders and directives of a supervisor when required would create chaos in carrying out these essential governmental functions and would greatly harm the efforts of the employer to carry out its duties and responsibilities.
Where the charged dereliction is an act, which, in view of the duties and obligations of the position, substantially disadvantages the public, good cause exists for removal. See Golaine v. Cardinale, 142 N.J.Super. 385, 361 A.2d 593 (Law Div.1976), aff'd, 163 N.J.Super. 453, 395 A.2d 218 (App.Div.1978). I FIND that appellant's acts are derelictions, which substantially disadvantages the public in view of the duties and responsibilities of the position of Principal Accountant in the Treasurer's Office of the County of Cape May. Accordingly, based upon the *1099 foregoing discussion, and based on the finding of guilt as to the charges, and because of the serious nature of the conduct of appellant, I CONCLUDE THAT appellant's removal as a Principal Accountant is the appropriate remedy in this matter.
In light of the voluminous record and the lengthy decision, both Klusaritz and the County sought and obtained additional time to file exceptions to the decision. Due to an administrative oversight, the Board did not obtain a second extension of time to render its final decision. Finally, on October 1, 2002, the Board's director wrote to the parties to advise that at its September 25, 2002, meeting, the Board adopted the findings and conclusions of the ALJ but did not adopt the recommendation for removal from employment, instead ordering a six-month suspension. On October 25, 2002, the Board filed its written decision giving the following reasons for reducing the penalty:
After a thorough and independent review of the entire record, including the voluminous exceptions filed by the appellant and the cross exceptions filed on behalf of the appointing authority, the Board agrees with the ALJ regarding the charges but disagrees that removal is the appropriate penalty. Rather, the Board finds that a six-month suspension is the appropriate penalty in this matter. In this particular circumstance, the Board does not find the appellant's actions in this matter worthy of removal. While the Board does not apply the concept of progressive discipline in a job performance case in exactly the same manner as a job misconduct case, still, the Board generally requires a progression of steps to address the employee's deficiencies before removal is affirmed. . . .
In this case, several factors mitigate against appellant's removal. Initially, the Board notes that the appointing authority, while arguing that it notified the appellant of his deficiencies, did not take any disciplinary action against the appellant regarding his performance prior to his removal. Additionally, based on the record, it is clear that the appointing authority should have taken further steps earlier in the process to indicate to the appellant that his performance was unacceptable. In this regard, the appointing authority should have documented such deficiencies throughout the process and given the appellant notice of such documentation. Such notice is of paramount importance since it gives an employee an indication that his or her performance must improve, and also gives notice of the opportunity to remedy such performance problems. Moreover, there is no substantive indication in the record demonstrating that the appellant was aware that such deficiencies could place his position in jeopardy prior to September 1996, more than two years after his initial employment.
Based on these factors, the Board finds that removal is too harsh a penalty in this matter. However, the Board does not wish to indicate to the appellant, that with the reduction in penalty that his performance was acceptable. Clearly, the ALJ found, and the Board agrees, that the appellant's performance was unacceptable. Rather, the imposition of a six-month suspension, the longest allowed under Merit System law and rules, should serve as an indication to the appellant that any future performance deficiencies may lead to his removal from employment.
The County and Klusaritz each appeal the final decision of the Board. The County contends that the Board erroneously modified the proper remedy of removal from employment to a suspension, and Klusaritz argues that the finding that his *1100 job performance was unacceptable was not warranted and, alternatively, that the length of suspension imposed was excessive. We first address Klusaritz's arguments in his cross-appeal.
We have given consideration to all of the issues Klusaritz raised in his appellate briefs and other submissions, as well as the hearing transcripts and items in evidence. The fundamental principle of our scope of review of a decision of the Merit System Board is that we will sustain it absent a clear showing that it is arbitrary, capricious, unreasonable or not supported by credible evidence in the record as a whole. Brady v. Board of Review, 152 N.J. 197, 210-11, 704 A.2d 547 (1997); Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980). Our review of its findings of fact is further circumscribed. We must give deference to such findings when they could reasonably be made considering the proofs as a whole and with due regard to the opportunity of the one who heard the testimony to assess credibility. Jackson v. Concord Company, 54 N.J. 113, 117-18, 253 A.2d 793 (1969). See also Sager v. O.A. Peterson Constr. Co., 182 N.J. 156, 163-64, 862 A.2d 1119 (2004); Campbell v. New Jersey Racing Comm'n, 169 N.J. 579, 588, 781 A.2d 1035 (2001); In re Taylor, 158 N.J. 644, 656-57, 731 A.2d 35 (1999). Furthermore, the Board itself is bound by the credibility determinations of the ALJ unless arbitrary, capricious or unreasonable. Cavalieri v. Board of Trustees, 368 N.J.Super. 527, 533-34, 847 A.2d 592 (App.Div.2004).
We have concluded that the decision of the Board finding that Klusaritz's job performance was inadequate and unacceptable is supported by sufficient credible evidence in the record as a whole and that Klusaritz's arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E). We therefore affirm that part of the Board's final decision.
We next address the issue of punishment by first considering the County's argument that the ALJ's recommendation for removal was automatically sustained under the "deemed-adopted" provision of N.J.S.A. 52:14B-10(c) since more than forty-five days passed from the adjourned deadline of the Board to give its final disposition. See Capone v. New Jersey Racing Comm'n, 358 N.J.Super. 339, 350, 817 A.2d 995 (App.Div. 2003); Mastro v. Bd. of Trs. Of Public Employees' Retirement System, 266 N.J.Super. 445, 451, 630 A.2d 289 (App. Div.1993). The Board placed the matter on its agenda for September 10, 2002, immediately after receipt of the County's responses to Klusaritz's exceptions to the ALJ decision. Since only three members were present and the Board wanted the full membership of five to review the lengthy matter, it missed the forty-five day deadline. The "deemed-adopted" provision is strictly construed and applicable only when the agency's failure to act constitutes, under the circumstances, gross indifference, inexcusable neglect or bad faith. King v. New Jersey Racing Comm'n, 103 N.J. 412, 421-22, 511 A.2d 615 (1986). In this case, the Board had received one extension and obviously would have received another in light of the voluminous record. See PENPAC, Inc. v. Passaic County Utilities Authority, 367 N.J.Super. 487, 497, 843 A.2d 1153 (App.Div.), certif. denied, 180 N.J. 457, 852 A.2d 193 (2004). The delay in filing the final decision caused no significant prejudice or unfairness to either party and resulted from excusable neglect. Therefore, the County's reliance on N.J.S.A. 52:14B-10(c) is misplaced.
The County next argues that the Board's modification of the penalty from *1101 termination of employment to a six-month suspension was arbitrary and unreasonable. While the imposition of a penalty by an administrative agency ordinarily will be affirmed, see, e.g., Knoble v. Waterfront Comm'n of N.Y. Harbor, 67 N.J. 427, 431-32, 341 A.2d 593 (1975), our constitutional authority "cannot be relegated to a mere rubber-stamp of agency action." Gerba v. Bd. of Trs. of Public Employees' Retirement System, 83 N.J. 174, 190, 416 A.2d 314 (1980) (Pashman, J., dissenting); State-Operated Sch. Dist. v. Gaines, 309 N.J.Super. 327, 332, 707 A.2d 165 (App. Div.), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998).
In Henry, supra, 81 N.J. at 580, 410 A.2d 686, our Supreme Court held that the Civil Service Commission (predecessor to the Board) acted arbitrarily in reducing a penalty on a state corrections officer from removal to a ninety-day suspension because it failed to consider the seriousness and ramifications of even a single instance of falsification of a report in this sensitive position. See also Bowden v. Bayside State Prison, 268 N.J.Super. 301, 305-06, 633 A.2d 577 (1993) (holding that it was arbitrary, capricious or unreasonable to reduce penalty from removal to six months suspension where a prison guard gambled with inmates for cigarettes) certif. denied, 135 N.J. 469, 640 A.2d 850 (1994); In re Hall, 335 N.J.Super. 45, 760 A.2d 1148 (App.Div.2000) (reversing Board's decision to overturn dismissal of a police officer for attempted theft in favor of suspension) certif. denied, sub nom., Hall v. City of Camden, 167 N.J. 629, 772 A.2d 931 (2001); Sabia v. City of Elizabeth, 132 N.J.Super. 6, 331 A.2d 620 (App.Div.1974); compare In re Warren, 117 N.J. 295, 566 A.2d 534 (1989) (reduction of penalty to suspension for a prison guard upheld where conduct was neglect of duty rather than intentional misconduct); In re Cohen, 56 N.J.Super. 502, 153 A.2d 708 (App.Div.1959).
In Gaines, supra, 309 N.J.Super. at 327, 707 A.2d 165, the Board reduced the penalty for a school guard from discharge to suspension for six months where the employee was guilty of chronic absenteeism, insubordination and conduct unbecoming. We held that the reduction was plainly mistaken and required judicial correction because the Board did not give sufficient weight to the prior disciplinary record and Gaines's indifference to employment responsibilities. Id. at 333-34, 707 A.2d 165.
Our prior reversals of Board reductions of penalties from dismissal to suspension have arisen in cases of employee misconduct. This case is quite different. The ALJ's undisputed finding was that Klusaritz was sincere, diligent and conscientious about his work, and a pleasant person in the workplace. The ALJ found no incidents of conduct unbecoming or unjustified absences from work, and none were alleged by the County. Rather, the central finding was that Klusaritz could not competently do the work his position required. The issue, therefore, is whether, in these circumstances, the Board's application of progressive discipline in reducing the penalty from dismissal to maximum permissible suspension was arbitrary, capricious, unreasonable or inconsistent with the statutory purpose of the civil service laws, N.J.S.A. 11A:1-1 to 12-6. We conclude that the Board's action warrants reversal.
The Board's election to apply progressive discipline was based both on the fact that Klusaritz had no prior suspensions and that he did not receive formal notice from the County as to its dissatisfaction with his work efforts and identification of the nature of its dissatisfaction. While no written notice was given, the ALJ found that Klusaritz was repeatedly told by his supervisor, the department head and the outside auditor over the period of his employment that the bank reconciliations he *1102 prepared were unsatisfactory and at times "incomprehensible." It simply ignores reality to claim that Klusaritz was without notice of the County's dissatisfaction with his job performance. Moreover, the fact that he had no prior suspensions is of no moment since it is not his conduct but his lack of competence that precipitated his termination by the County.
Klusaritz was not hired at an entry level where he was expected to learn on the job. He is a CPA and was expected to possess the requisite expertise to assist in the performance of the mandated obligations of the county treasurer's office. He was, in fact, given assistance and instruction by his supervisors, co-workers and the outside auditor but to no avail. There is ample proof in the record to substantiate the ALJ's finding that "appellant's acts are derelictions which substantially disadvantages the public in view of the duties and responsibilities of the position of Principal Accountant in the Treasurer's Office of the County of Cape May."
An accountant who cannot prepare a bank reconciliation is of no value to a county treasurer's office. In fact, Klusaritz was a detriment since time and effort of other employees as well as extra expense for the outside auditor were required due to his inability to perform his duties. Maintaining him in his position is contrary to the purpose of the civil service laws. N.J.S.A. 11A:1-2. See Campbell v. Dep't of Civil Serv., 39 N.J. 556, 583, 189 A.2d 712 (1963); Gaines, supra, 309 N.J.Super. at 332, 707 A.2d 165.
The Board's application of progressive discipline in this context is misplaced and contrary to the public interest. A suspension will not make Klusaritz competent. Throughout the course of these lengthy proceedings and despite the clear findings of the ALJ, Klusaritz has adamantly maintained that he always performed his work properly and that reports of his inadequacy were the result of a conspiracy against him. If we were to uphold the Board's penalty of a lengthy suspension, the only reasonable assumption is that nothing would change in terms of Klusaritz's job performance. Rather, there will be continuation of the need for others to correct or reconfigure Klusaritz's work product in order to uphold the integrity of the County's financial records. Worse, the perception of co-workers, others in municipal service and the public is that incompetency and inefficiency are tolerated.
As we have previously noted, "[t]here is no constitutional or statutory right to a government job." Gaines, supra, 309 N.J.Super. at 334, 707 A.2d 165. In addition, there is no right or reason for a government to continue employing an incompetent and inefficient individual after a showing of inability to change. If Klusaritz's performance were the same in the private sector, he would have been terminated for his failures long before the expiration of three and one-half years. We see no reason why the same standard should not apply in public employment.
While we normally give deference to an agency-imposed sanction, we are satisfied that the Board's decision was unreasonable, clearly mistaken and requires reversal. See Henry, supra, 81 N.J. at 580, 410 A.2d 686; Gaines, supra, 309 N.J.Super. at 334, 707 A.2d 165.
Therefore, we reverse and remand for entry of an order dismissing Klusaritz from his position and vacating the award of back pay and benefits.
Affirmed in part. Reversed in part.