**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3769-19

IN THE MATTER OF
ALEJANDRO PEREZ,
KEAN UNIVERSITY.

_____

Argued February 2, 2022 – Decided February 15, 2022

Before Judges Whipple, Geiger and Susswein.

On appeal from the New Jersey Civil Service Commission, Docket No. 2020-615.

Arthur J. Murray argued the cause for appellant Alejandro Perez (Alterman & Associates, LLC, attorneys; Stuart J. Alterman, of counsel; Arthur J. Murray, on the briefs).

Achchana Ranasinghe, Deputy Attorney General, argued the cause for respondent Kean University (Andrew J. Bruck, Acting Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Achchana Ranasinghe, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission (Debra A. Allen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant Alejandro Perez was employed as a police officer by respondent Kean University (Kean). Perez was removed from employment effective August 23, 2019, due to misconduct on February 6, 2019, and false statements he made to an internal affairs investigator regarding that misconduct. Perez appeals from the final administrative action of the Civil Service Commission (Commission) affirming the granting of Kean's motion for summary decision and his removal. We affirm.

We derive the following facts and procedural history from the record. Perez was employed by Kean as a campus police officer in the Kean University Police Department (KUPD). On February 6, 2019, Perez was dispatched around 3:00 a.m. to aid a student who complained of a sinus infection. Perez called an ambulance to transport the student to the hospital and then called Public Safety Telecommunicator Stephanie Willix. On the recorded telephone line, Perez made several derogatory and insensitive comments about the student because Perez felt the student somehow wasted his time or was not sick enough to warrant his attention. Perez told Willix that the student was a "f**king loser" and that he "will run [the student's] ass over with this f**king car." Perez and Willix laughed and made additional jokes about the student, including Perez's statement that the student should "tie the knot around [his] head." A log of the call included the inappropriate language that

was uttered. At one point, Perez referred to the student looking like the character Private Pyle from the movie Full Metal Jacket.

Following the mocking phone call, Perez continued the night shift by going to the Field House gymnasium (gym) on the Kean campus. Perez called out for a meal break and went to exercise at the gym. Perez entered the locked gym at about 3:11 a.m. Perez removed his duty weapon, police-issued radio, and cell phone and laid them unsecured and unattended on a chair in a public area of the gym. Before exercising, Perez used the restroom and became stuck inside when the restroom door would not open. Perez could not call for help because his radio and cell phone were both in the gym.

Perez was discovered around 4:00 a.m. by a custodian employed by a third-party, who tried to open the door but could not. The custodian called campus police and KUPD Lieutenant Keith Graham and Officer Sage Kaneshige responded at around 4:51 a.m. The officers used a crowbar to pry the door open, resulting in $1,573 in damages. The officers then socialized in the gym until 5:31 a.m. Perez, Graham, and Kaneshige left the gym and entered their respective patrol vehicles at 5:34 a.m. based on surveillance footage. Perez remained inside his patrol vehicle while parked outside the gym until 7:24 a.m. and did not perform any patrol duties between the time he was freed from the restroom until the end of his shift at 8:00 a.m.

A-3769-19

An internal affairs investigation of the events of February 6 was conducted by KUPD Lieutenant Thomas Hargrove. On March 28, 2019, Perez was interviewed by Hargrove in the presence of his attorney and union representative. Perez was untruthful at this interview when he stated he and Graham spoke for approximately twenty minutes before they both drove off to resume patrol duties. Video surveillance footage showed Perez remained parked next to Graham's vehicle for one hour and fifty minutes after they left the gym. While there was no allegation that Perez failed to respond to a call for service, he was not patrolling the campus during the remainder of his shift.

On June 12, 2019, Perez was served with a Preliminary Notice of Disciplinary Action (PNDA) that charged him with incompetency, inefficiency, or failure to perform duties, N.J.A.C. 4A:2-2.3(a)(1); conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); neglect of duty, N.J.A.C. 4A:2-2.3(a)(7); and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12). Kean also charged Perez with violation of numerous KUPD Rules and Regulations, including failure to abide rules and regulations (3.1.3), failure to obey laws, rules, policies, and procedures (4.1.3), failure to perform assigned duties (3.1.9, 4.1.1, 6.1.1), failure to conduct himself in accordance with high ethical standards (3.1.6), improper handling of firearms (4.8.1, 4.8.3), improper care of department property (4.8.4), improper use of department

vehicles (4.8.9), failure to be truthful at all times (4.12.6), failing to be courteous and orderly when dealing with the public (4.10.1), and committing repeated violations (6.1.2). It also charged Perez with violating General Order 22.3.1.4A, which requires officers to sign a release form before using Kean's workout facilities. The PNDA advised Perez that Kean sought his removal.

A departmental hearing took place on July 3, 2019. Perez was served with an August 21, 2019 Final Notice of Disciplinary Action ("FNDA"), removing him effective August 23, 2019 on the following charges: incompetency, inefficiency, or failure to perform duties, N.J.A.C. 4A:2-2.3(a)(1); conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); neglect of duty, N.J.A.C. 4A:2-2.3(a)(7); and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12).

In its specifications for the charges, Kean indicated that on February 6, 2019, "Perez was dispatched to a medical call for a student. After responding to the call, Perez [made] several derogatory and threatening comments laced with profanity regarding the student while speaking to . . . Willix over a recorded police telephone line." Kean further specified that Perez left his duty belt, duty weapon, and police-issued radio unsecured and unattended in a public area. After becoming trapped in a locked bathroom, Perez was freed from the bathroom by other officers, "result[ing] in costly damage to the

restroom door." Perez then remained in his patrol vehicle from approximately 5:34 a.m. until 7:24 a.m., "socializing for much of that time . . . [and] did not perform any patrol functions between about 4:51 [a.m.] and the end of his shift at 8:00 [a.m.]." "During an Internal Affairs interview conducted on or about March 28, 2019, Officer Perez untruthfully stated that he resumed patrol duties after leaving the Field House."

Perez appealed his removal to the Commission and the Office of Administrative Law (OAL). The appeal was assigned to an Administrative Law Judge (ALJ) as a contested case.

At a prehearing conference held on October 9, 2019, Kean informed Perez and the ALJ that it intended to file a motion for summary decision, and did so on January 23, 2020. Perez opposed the motion.

On April 2, 2020, the ALJ issued a twenty-one page Amended Initial Decision, which granted Kean's motion for summary decision, finding the case was "ripe for summary decision" because the material facts were "clear and undisputed." The ALJ explained:

> In this case, no genuine issue as to the material facts exists, and the only question presented is whether Kean sustained its charges, and if sustained, the appropriate discipline. More pointedly, no genuine issue exists that Perez used profanity and made derogatory comments about a student on a recorded police-designated phone line and that he left his service weapon and radio unattended in a public

A-3769-19

location. Further, Perez did not resume vehicle patrol duties away from the fieldhouse following extrication for the conclusion of his shift on February 6, 2019, and was untruthful about "driving off" to resume patrol duties during an internal affairs interview.

The Amended Initial Decision included a detailed recitation of the facts. The ALJ noted that "[t]he material evidence against Perez [was] his admissions supported by inherently credible sources of surveillance video footage, [body-worn camera] footage, a dispatch audio recording, and an internal affairs interview of Perez. Indeed, Perez does not question the credibility of this evidence." The ALJ found that "[n]either Perez nor Graham logged CAD entries of patrol or building checks after Perez's extrication from the restroom." In addition, surveillance cameras showed that Graham and Perez "remained in their cars at the fieldhouse from 5:34 a.m. until 7:25 a.m. Thus, Perez did not check the security of any other building or parking lot for nearly two hours."

The ALJ further found that "[a]t the departmental hearing, . . . Perez apologized for his inappropriate discussion about the student." In his opposing certification, Perez claimed "that following the incident in the bathroom, he felt frightened and desired to be in the presence of other people."

The ALJ found that the evidence established the following facts:

> Perez engaged in a series of acts that are incompatible with a high degree of integrity expected

of all law enforcement officials. Initially, even if patrol duties permit an officer to remain in his vehicle and speak with another officer for an extended period, Perez did not "drive off" and resume patrol duties, as he stated during his internal investigation interview. The dispute is not what does or does not encompass patrol duties, but that Perez did not do what he said he did during his interview. In other words, he lied.

Also, Perez became separated from and did not secure his service weapon or police radio before entering the restroom. The safety risk to the public may diminish with a holstered gun in a locked and empty public building. Yet, an unattended service weapon still poses a public safety risk and violates Kean's rules and regulations. Undeniably, the rules do not provide exceptions for weapons left in holsters or temporarily empty public buildings. Further, Perez was required to have his radio in his possession, turned on, and tuned to the proper frequency while on duty; instead, he did not. Without his radio, Perez was unable to call out for aid.

Regardless of the student's absence during Perez's statements about him and Perez's correct handling of the medical call, Perez showed significant disrespect and disregard for a student whom he must serve and protect. Perez's conduct is not consistent with high ethical standards required of officers, on or off-duty, under Rule 3.16, even when not a violation of conduct towards the public under Rule 4.10.1.

The ALJ concluded that Kean had sustained the charges by a preponderance of the evidence except violating Rule 4.10.1 (courteous treatment of the public) and General Order 22.3.1.4A (signing release before using workout facilities),.

The ALJ then considered the appropriate penalty for Perez's misconduct. The ALJ noted that "[m]isconduct is severe when it renders the employee unsuitable for continuation in the position, or when the application of progressive discipline would be contrary to the public interest—such as when the job involves public safety and the misconduct causes a risk of harm to persons or property."

The ALJ found that Perez had received prior discipline, including a written reprimand for discourteous conduct toward a student in 2008, a two-day suspension for refusal to submit a report in 2010, and a six-day suspension for insubordination and disrespectful conduct unbecoming a police officer in 2013. Perez had also received a series of corrective memoranda addressing issues concerning patrol duties in 2007, following orders in 2009, and abuse of sick leave in 2010. The ALJ recognized that Perez had been a KUPD police officer for nearly twenty years, his most recent discipline occurred nearly six years before these incidents, and much of it did not involve similar conduct.

The ALJ determined that removal was justified due to "the egregious nature of Perez's conduct on February 6, 2019, and during his internal affairs interview on March 28, 2019 . . . ." "Perez demonstrated a serious lapse in judgment by failing to secure his service weapon or carry his radio that created an unnecessary safety risk for the public." His statements about the student

requesting medical assistance were "admittedly offensive." His untruthfulness during his internal affairs interview compromised "the integrity of legitimate law-enforcement work" and "public trust in law enforcement suffers."

The ALJ rejected Perez's claims that procedural irregularities warranted dismissal of the charges. She noted that Perez received notice of the Internal Affairs investigation. The PNDA advised Perez of the charges brought against him. As to the timeliness of the filing of the charges, the ALJ noted the forty-five-day rule filing period did "not begin until the person authorized to file the charges obtains adequate information necessary to determine whether charges are appropriate." Moreover, the forty-five-day rule only applies to charges "related to violations of departmental rules and regulations, not complaints based on misconduct where no time constraints apply." Less than forty-five days elapsed between the completion of the Internal Affairs investigation and the issuance of the PNDA.

As to the alleged procedural improprieties at the departmental hearing, including claims that the departmental hearing officer was biased, the ALJ explained that such irregularities are cured by a later hearing at the OAL. The ALJ noted the appeal of the disciplinary action was considered "as if no prior hearing occurred and as if no decision had issued."

A-3769-19

Perez filed lengthy exceptions to the Amended Initial Decision. He complained that the ALJ did not adequately consider his arguments and that the outcome was predetermined. He contended that the ALJ misinterpreted Perez as a university police officer rather than a campus police officer. Perez asserted that the Initial Decision incorrectly stated he had not identified any lay or expert witnesses that he intended to call as a witness. His attorney certified that "Perez requested that certain witnesses be made available at the departmental hearing" to provide facts, context, and additional information regarding the alleged incidents. Perez claimed Kean refused to provide the witnesses he requested unless they were witnesses Kean was calling.

Perez also contended that his denial he was untruthful during the Internal Affairs interview created a fact in dispute involving credibility, making it inappropriate to decide the appeal by summary decision. Perez also challenged the ALJ's conclusion that he provided no evidence to support his allegation that the hearing officer was biased. He noted that a civil lawsuit had been filed against the hearing officer.

On May 22, 2020, the Commission issued a final administrative action accepting and adopting the findings of fact and conclusions contained in the ALJ's Amended Initial Decision, affirming the granting of Kean's motion for summary decision, and affirming the removal of Perez. This appeal followed.

Perez raises the following points for our consideration:

POINT I

KEAN WAS ENTIRELY WITHIN ITS RIGHT TO PROCEED WITH ITS DEPARTMENTAL HEARING WITHOUT ALLOWING PEREZ TO RETAIN AN EXPERT AND CALL THAT EXPERT TO TESTIFY. (Not argued below).

POINT II

PEREZ WAS DEPRIVED OF HIS OPPORTUNITY TO CURE DEFICIENCIES AT KEAN'S DEPARTMENTAL HEARING IN THE OAL.

POINT III

THE SUMMARY DISPOSITION MOTION IN THIS MATTER WAS DECIDED ON SOMETHING LESS THAN THE FULL RECORD.

POINT IV

THE ALJ'S AMENDED INITIAL DECISION CONTAINS A PATENT FALSEHOOD CONCERNING THE IDENTIFICATION OF EXPERT WITNESSES PEREZ PLANNED TO CALL IF THERE WERE A HEARING.

POINT V

PEREZ'S PAST DISCIPLINARY HISTORY SHOULD NOT HAVE BEEN ATTACHED AS AN EXHIBIT TO THE MOTION FILED BY KEAN, BUT RATHER SHOULD HAVE BEEN SUBMITTED UNDER SEAL TO THE ADMINISTRATIVE LAW JUDGE. (Not argued below).

POINT VI

ANY REMAND TO THE OFFICE OF ADMINISTRATIVE LAW VIA THE CIVIL SERVICE COMMISSION SHOULD INCLUDE A REASSIGNMENT TO AN ALTERNATE ADMINISTRATIVE LAW JUDGE.

We affirm the final administrative action of the Commission removing Perez substantially for the reasons expressed by the ALJ in her comprehensive and well-reasoned Amended Initial Decision, which the Commission accepted and adopted. The Commission's final administrative action "is supported by sufficient credible evidence on the record as a whole" and does not warrant extended discussion. R. 2:11-3(e)(1)(D). We add the following comments.

"A party may move for summary decision upon all or any of the substantive issues in a contested case." N.J.A.C. 1:1-12.5(a). The motion may be granted if the motion record "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law." N.J.A.C. 1:1-12.5(b). To avoid summary decision, the adverse party "must by responding affidavit set forth specific facts showing that there is a genuine issue which can only be determined in an evidentiary proceeding." Ibid. If the opposing party does not demonstrate that a genuine issue of material fact exists, an evidentiary hearing is unnecessary, even when constitutionally protected interests are at stake. Contini v. Bd. of Educ. of

13                                                                    A-3769-19

<u>Newark</u>, 286 N.J. Super. 106, 120-21 (App. Div. 1995) (citing <u>Codd v. Velger</u>, 429 U.S. 624 (1977); <u>Weinberger v. Hynson, Westcott & Dunning</u>, 412 U.S. 609 (1973)).

The standard for summary decision "is substantially the same as that governing a motion under <u>Rule</u> 4:46-2 for summary judgment in civil litigation." <u>Id.</u> at 121. "Under this standard, the court or agency must determine 'whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" <u>Id.</u> at 122 (quoting <u>Brill v. Guardian Life Ins. Co.</u>, 142 N.J. 520, 523 (1995)).

Here, the record demonstrates that the controlling material facts were not in dispute. The ALJ properly decided the appeal by summary decision.

Perez argues there were deficiencies at the department hearing, including the alleged bias of the hearing officer, that he could not remedy because Kean was granted summary decision. We are unpersuaded.

<u>In re Morrison</u> involved similar facts where a police officer appealed a decision of the Commission terminating his employment. 216 N.J. Super 143 (App. Div. 1987). The officer argued the proceedings at the departmental hearing were void <u>ab initio</u> because of bias. <u>Id.</u> at 151. We rejected the

14

officer's argument, finding that the ALJ "considered all of the evidence anew and made findings which were not premised on any finding of the hearing officer at the local level." Id. at 151-52. In fact, we held that any review of the departmental hearing was precluded because the ALJ provided a de novo hearing which was done by an unbiased adjudicator and "[i]t is as if there had been no prior hearing and as if no decision had been previously rendered." Id. at 151 (quoting Cliff v. Morris Cnty. Bd. of Soc. Servs., 197 N.J. Super. 307, 315 (App. Div. 1984)). We reach the same conclusion here. The ALJ did not base her findings or conclusions on what occurred at the departmental hearing or the findings or conclusions of the hearing officer. She considered the evidence anew.

Our scope of review of the final administrative action of an agency is limited. Pub. Serv. Elec. & Gas Co. v. N.J. Dep't of Env't Prot., 101 N.J. 95, 103 (1985); Kadonsky v. Lee, 452 N.J. Super. 198, 201-02 (App. Div. 2017). A strong presumption of reasonableness attaches to the Commission's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001). The party challenging the final administrative action has the burden to demonstrate grounds for reversal. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). Reversal of an agency's decision is only appropriate if the challenger clearly demonstrates that the decision was "arbitrary, capricious

15

or unreasonable." Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963). Under that standard, our scope of review is guided by three major inquiries: (1) whether the agency's decision conforms with the relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion. In re Stallworth, 208 N.J. 182, 194 (2011). "When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007).

When an agency decision satisfies such criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, acknowledging the agency's "expertise and superior knowledge of a particular field." Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). A reviewing court will not substitute its judgment for the agency's even though it may have reached a different result. Stallworth, 208 N.J. at 194.

The deferential standard of review "applies to the review of disciplinary sanctions as well." Herrmann, 192 N.J. at 28. Considering "the deference owed to such determinations," the test "'is whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be

16

shocking to one's sense of fairness.'" Id. at 28-29 (quoting In re Polk, 90 N.J. 550, 578 (1982)).

In appeals from major disciplinary action, the appointing authority bears the burden of proof. N.J.A.C. 4A:2-1.4(a). The appointing authority must prove the charges "by a fair preponderance of the believable evidence." In re Suspension or Revoc. License of Kerlin, 151 N.J. Super. 179, 184 n.2 (App. Div. 1977) (citing Atkinson v. Parsekian, 37 N.J. 143, 149 (1962)). The hearing as to both guilt and the penalty imposed is de novo. Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980).

"[A] police officer is a special kind of public employee." Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965). They represent "law and order to the citizenry and must present an image of personal integrity and dependability in order to have the respect of the public." Ibid. "Police officers are held to higher standards of conduct than other public employees." In re Att'y Gen. L. Enf't Directive Nos. 2020-5 & 2020-6, 465 N.J. Super. 111, 147 (App. Div. 2020), aff'd as modified, 246 N.J. 462 (2021) (citing In re Phillips, 117 N.J. 567, 577 (1990)). Consequently, their performance is subject to "a higher degree of scrutiny" than other public employees. Ibid. (citing N.J.S.A. 40A:14-118).

A police officer's dishonesty during an internal affairs investigation is particularly significant because it calls "into question [the officer's] honesty, integrity, and truthfulness, essential traits for a law enforcement officer." Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 362 (2013).

"Conduct unbecoming a public employee" is an elastic phrase encompassing conduct that adversely affects the morale or efficiency of a governmental unit, or that tends to destroy public respect for governmental employees and confidence in the delivery of governmental services. Karins v. City of Atl. City, 152 N.J. 532, 554-55 (1998). In turn, conduct unbecoming a police officer need not "be predicated upon a violation of any particular rule or regulation but may be based merely upon the violation of the implicit standard of good behavior." Hartmann v. Police Dep't of Vill. of Ridgewood, 258 N.J. Super. 32, 40 (App. Div. 1992) (quoting Asbury Park v. Dep't of Civil Serv., 17 N.J. 419, 429 (1955)). We have recognized the importance of maintaining discipline in a police department. Rivell v. Civil Serv. Comm'n, 115 N.J. Super. 64, 72 (App. Div. 1971). "Refusal to obey orders and disrespect cannot be tolerated. Such conduct adversely affects the morale and efficiency of the department." Ibid. In Cosme v. E. Newark Twp. Comm., we affirmed the dismissal of a police officer for infractions that went to the heart of the

officer's ability to be trusted to function appropriately in his position. 304 N.J. Super. 191, 206-07 (App. Div. 1997).

Generally, "neglect of duty" means the failure to perform an assigned task or responsibility and act as required by the description of the employee's job title. Under N.J.A.C. 4A:2-2.3(a)(1), demonstrated lack of competence or unfitness are grounds for termination. Klusaritz v. Cape May Cnty., 387 N.J. Super. 305, 316 (App. Div. 2006). Failure to exercise appropriate judgment is also a basis for removal of an employee in a sensitive position that requires public trust in that judgment. Herrmann, 192 N.J. at 36-38.

Kean satisfied its burden of proof. The motion record clearly established that Perez was guilty of these charges. The ALJ's findings and conclusions were amply supported by substantial credible evidence in the record and consonant with applicable law. In turn, the Commission undertook an "independent evaluation of the record" and the ALJ's Amended Initial Decision. Based on that evaluation, the Commission affirmed the ALJ's decision to grant Kean's motion for grant summary decision and remove Perez.

Perez's misconduct was severe, negatively impacted the department, risked public safety, and was compounded by his untruthfulness during the internal affairs interview. Removal was not disproportionate to the violations

committed or otherwise manifestly unfair. We discern no abuse of discretion or legal error.

Perez argues that the case must be remanded so that the record includes his expert's report. We disagree. The expert report did not address the material facts. It focused entirely of procedural aspects of the internal affairs investigation. The material facts were not in dispute. Unassailable evidence in the record established the nature and severity of Perez's misconduct. Therefore, summary decision was appropriate.

Perez's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E)

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION