**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1528-23

BREIA RENNER,

    Plaintiff-Appellant,

v.

GLOUCESTER COUNTY
PROSECUTOR'S OFFICE,

    Defendant-Respondent.

_____

Submitted April 30, 2025 – Decided July 15, 2025

Before Judges Rose and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0534-23.

The Vigilante Law Firm, PC, attorneys for appellant (Jacqueline M. Vigilante and Christopher J. Ross, on the briefs).

Brown & Connery, LLP, attorneys for respondent (Michael J. DiPiero, on the brief).

PER CURIAM

Plaintiff Breia Renner appeals from the December 13, 2023 Law Division order affirming a five-day suspension imposed on her by defendant Gloucester County Prosecutor's Office (GCPO) for an unauthorized search of a police records database and lack of candor during the investigation of her database access infraction. We affirm.

I.

We discern the following facts from the record. Plaintiff was a Sworn State Investigator and Acting Detective at the GCPO. On February 5, 2022, plaintiff received a call from a friend, Debora Sasselli, who said her cousin was punched in the face at a local bar that evening. Sasselli expressed her belief the assailant was an off-duty police officer and the fight was "swept under the rug" by responding officers who allowed him to leave the bar without being arrested. She asked plaintiff for advice on filing a complaint about the incident. Plaintiff advised Sasselli to contact the local police department to report her concerns.

Plaintiff was upset about Sasselli's call and felt obligated to review the police reports relating to the incident to determine what transpired and to assist Sasselli in identifying the assailant. Plaintiff, who was assigned to the GCPO's Crime Scene Investigation Unit, conceded she was not assigned to investigate the incident.

February 9, 2022, was plaintiff's first day in the office after speaking with Sasselli. As he was preparing to leave for lunch, plaintiff's supervisor, Sergeant Anthony Garbarino, saw her looking for support staff in the Grand Jury Unit (GJU), where plaintiff was previously assigned. Plaintiff told Garbarino she wanted a staff member to conduct a search on ProPhoenix, a database of police incident and arrest reports, for information about an incident that happened a few days earlier. Both plaintiff and Garbarino were authorized to search ProPhoenix, but only for the purpose of performing their official duties. Plaintiff's training included GCPO policies limiting database use to official business. Noting the absence of GJU support staff, Garbarino offered to conduct the search for plaintiff. According to plaintiff, she accepted Garbarino's offer because she had not accessed ProPhoenix recently and thought she would have to reset her password.

As they walked to Garbarino's office, plaintiff told him about the incident and said she originally intended to go to the bar with friends that night, but decided against it. Plaintiff told Garbarino she was interested in knowing if anyone involved had been arrested. Plaintiff did not tell Garbarino the fight may have involved an off-duty police officer or that a relative of her acquaintance was assaulted in the fight.

A-1528-23

Garbarino used his log-in information to access the database. During the sign-in process, ProPhoenix displayed a message stating access to the database is authorized for official purposes only. Plaintiff gave Garbarino a local police department case number for the incident, which she had written on a sticky note. He saw three reports. As Garbarino reviewed the reports, plaintiff read over his shoulder. After reading one report, plaintiff commented it did not say if anyone was arrested. Plaintiff requested Garbarino open a second report. Shortly after he opened the second report, Garbarino noticed the name of a local police officer who may have been involved in the fight. At that point, Garbarino realized the matter was likely the subject of an internal affairs investigation and he and plaintiff were prohibited from viewing the reports. Garbarino immediately terminated the search and questioned plaintiff about the purpose of her request to view the records.

Plaintiff explained she was interested in the incident because a relative of her acquaintance was assaulted by an off-duty police officer, who responding officers failed to arrest. Plaintiff told Garbarino she obtained the case number from Sasselli, who got the number from the local police department. Garbarino told plaintiff they were not authorized to look at reports about officer-involved

4

incidents and that she put him in a difficult position by involving him in the records search. Plaintiff minimized the significance of accessing the reports.

A short time later, Garbarino reported his interaction with plaintiff to a detective in the GCPO's Internal Affairs Unit and, on that officer's advice, Garbarino sent an email to his supervisor recounting what transpired with plaintiff. The matter was transferred to the Cumberland County Prosecutor's Office (CCPO) to avoid an unrelated conflict of interest. CCPO initiated an internal affairs investigation.

CCPO Detective Monica Mosley interviewed plaintiff who, at the start of the interview, signed a form acknowledging she could be subjected to discipline for making a false statement during the interview. Plaintiff denied looking for staff in the GJU to conduct the database search and denied having a case number for the incident. She admitted causing Garbarino to search ProPhoenix, stating her intention was to assist Sasselli in identifying the officer who assaulted her cousin. Plaintiff told Mosley she spoke about the incident, including the involvement of an off-duty police officer, with GCPO Detectives Christopher Senor and Steven Hogan, and Garbarino on the morning of February 9, 2022, before Garbarino agreed to conduct the search. Plaintiff denied it was

5

inappropriate for her to review the reports and said GCPO staff frequently searched ProPhoenix for personal reasons.

In an interview with Mosley, Garbarino denied having discussed the incident with plaintiff or other detectives prior to offering to search ProPhoenix for plaintiff. He stated he had no knowledge of the details of the incident or the possibility it involved an off-duty officer until he read the reports in the database. Garbarino told Mosley no one else was present when he offered to conduct the search for plaintiff. He felt plaintiff exposed him to disciplinary repercussions by causing him to search the database for reports relating to an officer-involved matter for personal reasons.

Mosley interviewed Senor. He stated he believed he was at work on February 9, 2022, but also did not recall discussing the incident with plaintiff. He acknowledged it was common for his coworkers to have a roundtable discussion in the mornings about events that occurred over the past few days, but did not recall plaintiff mentioning the incident.

Mosley also interviewed Hogan. He stated he was at work on February 9, 2022, but did not recall having a discussion with plaintiff about the incident. He did not recall plaintiff asking Garbarino to access the database or Garbarino offering to do so. Hogan stated the interview was the first time he heard about

A-1528-23

the incident at the bar and if he had discussed the matter with plaintiff on February 9, 2022, he likely would have remembered because of the alleged involvement of an off-duty officer.

Mosley interviewed Sasselli who denied obtaining the case number for the police reports relating to the incident. She stated plaintiff provided her with no information other than advice to file a complaint with the local police department. Sasselli stated witnesses at the bar told her the woman who drove the assailant away from the scene was a local police officer. Sasselli used the internet to obtain that officer's name and, through the officer's Facebook account, determined the officer's spouse was a retired police officer and the person who assaulted her cousin. Sasselli provided the name of the alleged assailant to plaintiff in a second phone call prior to February 9, 2022.

On August 1, 2022, Mosley issued a report sustaining both charges against plaintiff. Mosley found plaintiff caused Garbarino to access ProPhoenix to review police reports for purposes unrelated to her official duties. Mosley also noted several instances of plaintiff having provided false information during the investigation. Mosely found that although plaintiff denied providing Garbarino with a case number for the incident, ProPhoenix log-in records indicate Garbarino's search was conducted by case number. In addition, although

A-1528-23

plaintiff stated she caused Garbarino to access police reports on ProPhoenix to assist Sasselli in identifying the officer involved in the fight, Sasselli said she identified the officer using the internet and told plaintiff his name prior to February 9, 2022. Thus, Mosley found plaintiff was untruthful when she stated her purpose in causing Garbarino to search ProPhoenix.[1]

On August 17, 2022, GCPO served plaintiff with a Preliminary Notice of Disciplinary Action charging her with: (1) inappropriate access to an official report for personal reasons in violation of the GCPO security policy and human resource manual provisions limiting use of GCPO databases to the performance of official duties; and (2) lack of candor for making the false statement during her interview that she discussed the incident with Hogan, Senor, and Garbarino on the morning of February 9, 2022. Plaintiff entered a plea of not guilty and requested an administrative hearing.

On May 9, 2023, after conducting a hearing at which Mosely, Garbarino, Hogan, and Senor testified, the hearing officer issued a written decision sustaining all charges against plaintiff. The hearing officer found plaintiff "was simply seeking information for which she had no official use" when she caused

---

[1] Mosley also found another GCPO employee inappropriately accessed ProPhoenix to review police reports concerning the incident.

Garbarino to access the database and "failed to identify a criminal justice purpose for accessing the case information." Accordingly, the hearing officer sustained the first charge.

In addition, the hearing officer found there was no evidence adduced at the hearing the February 9, 2022 discussion with other detectives described by plaintiff during her interview took place. Hogan and Senor did not recall such a discussion and Garbarino denied the discussion happened. The hearing officer found it was reasonable to conclude that if plaintiff, who claimed to have been aggravated, had discussed a fight involving an off-duty police officer with Hogan, Senor, and Garbarino in an aggravated state they would have recalled that conversation. The hearing officer also noted plaintiff claimed the conversation took place in the morning of February 9, 2022, and ProPhoenix records indicate Garbarino's search took place shortly after noon. Based on those conclusions, the hearing officer sustained the second charge.

Although the hearing officer recognized plaintiff had no significant disciplinary history, she found a five-day suspension was reasonable and appropriate. The hearing officer noted the GCPO security policy calls for criminal, civil, or administrative penalties, including termination, when the policy is violated. In addition, the hearing officer found plaintiff's violation was

not mitigated by Garbarino having assisted her in accessing the restricted records. Finally, the hearing officer noted plaintiff violated the trust vested in her when GCPO authorized her to access ProPhoenix.

On May 10, 2023, plaintiff was served with a Final Notice of Disciplinary Action imposing a five-day, unpaid suspension.

On May 18, 2023, plaintiff filed a complaint in lieu of prerogative writs in the Law Division seeking a de novo review of the hearing officer's findings and sanction.

On December 13, 2023, after a de novo review of the record, the court issued an oral decision sustaining the two disciplinary charges against plaintiff. The court found there was "no question" plaintiff accessed ProPhoenix for personal reasons unrelated to her official duties. The court agreed with the hearing officer's conclusion plaintiff had no official affiliation with the bar fight and accessed police reports relating to the incident out of curiosity and because a relative of her acquaintance was the alleged victim. The court was not persuaded by plaintiff's argument she should not be disciplined because other GCPO employees accessed the database for personal reasons.

The court also found sufficient support in the record to sustain the conclusion plaintiff lacked candor during her interview with Mosley. The court

10

deferred to the hearing officer's determination plaintiff lacked credibility when she claimed she discussed the bar fight with Hogan, Senor, and Garbarino on the morning of February 9, 2022. The court found sufficient evidence in the record to support the conclusion plaintiff provided Mosely with incorrect and potentially misleading information regarding the breadth of who was involved in and aware of her unauthorized use of the database.

The court rejected plaintiff's argument that the candor charge could be substantiated because Mosley testified at the hearing that she recanted any allegation plaintiff misrepresented her intent in causing Garbarino to conduct the search. The court found the two allegations of lack of candor – plaintiff's stated purpose in conducting the search and the occurrence of the February 9, 2022 discussion – distinct. Finally, the court found the five-day suspension to be appropriate and consistent with progressive discipline, given the serious nature of the offenses. A December 13, 2023 order sustains the disciplinary findings and sanctions.

This appeal followed. Plaintiff argues the December 13, 2023 order should be reversed because: (1) her supervisor agreed to access the database for her after she told him about the incident and GCPO employees commonly searched the database for personal reasons; (2) she did not disseminate any

11

information from the database; (3) the finding plaintiff lacked candor was based on her claim she had a discussion with Hogan, Senor, and Garbarino on February 9, 2022, when the disciplinary charge alleged only that she misrepresented her purpose in accessing the database, an allegation Mosley later recanted; (4) the trial court erred when it adopted the hearing officer's credibility determinations; and (5) the record contains no evidence explaining the basis for the five-day suspension and the penalty does not comport with principles of progressive discipline.

## II.

The statutory framework for disciplinary proceedings against plaintiff, a non-civil service law enforcement officer, is governed by N.J.S.A. 40A:14-147 to -151. See Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 343 (2013). That statutory scheme requires GCPO demonstrate "just cause" for any suspension, termination, fine, or reduction in rank. Id. at 354 (quoting N.J.S.A. 40A:14-147). Just cause includes "incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force . . . ." N.J.S.A. 40A:14-147. Disciplinary charges must be established by a preponderance of the evidence. In re Phillips, 117 N.J. 567, 575 (1990).

Pursuant to N.J.S.A. 40A:14-150, a law enforcement officer adjudicated guilty of any disciplinary charge after a departmental hearing may seek review in the Superior Court. Ruroede, 214 N.J. at 355. The trial court's review is de novo. Ibid. The court must conduct "an independent, neutral, and unbiased" review of the disciplinary action, making its own findings of fact and "reasonable conclusions based on a thorough review of the record." Id. at 357 (quoting Phillips, 117 N.J. at 580). "Although a court conducting a de novo review must give due deference to the conclusions drawn by the original tribunal regarding credibility, those initial findings are not controlling." Ibid. (quoting Phillips, 117 N.J. at 579).

We exercise a "limited" role in our review of the de novo proceeding. Phillips, 117 N.J. at 579. "[W]e must ensure there is 'a residuum of legal and competent evidence in the record to support'" the court's decision. Ruroede, 214 N.J. at 359 (quoting Weston v. State, 60 N.J. 36, 51 (1972)). "The residuum rule does not require that each fact be based on a residuum of legally competent evidence but rather focuses on the ultimate finding or findings of material fact." Ibid. We do not make new factual findings, but merely "decide whether there was adequate evidence before the . . . [c]ourt to justify its finding of guilt." Phillips, 117 N.J. at 579 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

The court's de novo findings should not be disturbed, absent a finding that "the decision below was 'arbitrary, capricious or unreasonable' or '[un]supported by substantial credible evidence in the record as a whole.'" Ibid. (quoting Henry v. Rahway State Prison, 81 N.J. 571, 580 (1963)). However, we review the trial court's legal conclusions de novo. Cosme v. Borough of E. Newark Twp. Comm., 304 N.J. Super. 191, 203 (App. Div. 1997) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We reviewed the record in light of these principles and conclude there is sufficient evidence in the record supporting the trial court's determination plaintiff committed two disciplinary infractions. We agree with the trial court's finding there is "no question" plaintiff caused Garbarino to search the ProPhoenix database for personal reasons unrelated to her official duties. Like the trial court, we are not persuaded by plaintiff's claim she cannot be disciplined for this infraction because Garbarino agreed to conduct the search for plaintiff. Once Garbarino became aware of the off-duty officer's involvement in the incident, he immediately closed the database because it was likely internal affairs would conduct an investigation into the matter. Nor do we agree with plaintiff's argument it is unfair to discipline her when other GCPO employees regularly accessed the database. The alleged violation of the GCPO's database

14

security policy by other employees is not germane to whether plaintiff improperly caused Garbarino to search the ProPhoenix database.

In addition, the fact plaintiff did not disseminate information she obtained from her improper review of the database does not excuse her infraction. The security policy clearly limits use of the database to the performance of official duties. While dissemination of information in the database is a serious infraction, accessing the database for personal reasons alone is sufficient to sustain a disciplinary charge.

We agree with GCPO's argument that Mosley's recantation of her finding plaintiff lacked candor when she misrepresented her intent in accessing the database did not preclude the trial court from finding plaintiff lacked candor when she claimed to have discussed the bar fight with Garbarino and two other detectives. The trial court is obligated to review the record as a whole and in doing so it found evidence that none of the participants who purportedly participated in the alleged discussion could confirm it took place. In addition, ProPhoenix records indicate Garbarino accessed the database in the afternoon of February 9, 2022, not the morning. There is sufficient evidence in the record on which to support the court's finding that plaintiff fabricated the discussion in an attempt to minimize her infraction by suggesting other GCPO detectives were

aware an off-duty officer was involved in the bar fight and did not stop Garbarino from allowing plaintiff to review the police reports.

We also affirm the sanction imposed on plaintiff. Progressive discipline "generally requires a progression of steps to address the employee's deficiencies . . . ." Klusaritz v. Cape May Cnty., 387 N.J. Super. 305, 312 (App. Div. 2006). Progressive discipline is not necessary, however, "when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest." In re Stallworth, 208 N.J. 182, 197 (2011) (quoting In re Herrmann, 192 N.J. 19, 33 (2007)).

To determine whether a disciplinary action is appropriate, we assess whether the "punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Herrmann, 192 N.J. at 28-29 (quoting In re Polk, 90 N.J. 550, 578 (1982)). Our Supreme Court has warned "courts should take care not to substitute their own views of whether a particular penalty is correct for those of the body charged with making that decision." In re Carter, 191 N.J. 474, 486 (2007).

Plaintiff's violation of the security policy was a serious infraction. The integrity of the sensitive information contained in the database was

16

compromised when plaintiff caused Garbarino to search police reports unrelated to plaintiff's official duties. The security policy permits sanctions up to termination when an officer searches police records for personal reasons. A five-day suspension for plaintiff's violation and lack of candor was appropriate. A GCPO detective "is a special kind of public employee. [Her] primary duty is to enforce and uphold the law . . . . [She] represents law and order to the citizenry and must present an image of personal integrity and dependability in order to have the respect of the public." Carter, 191 N.J. at 486 (quoting Twp. of Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965)).

To the extent we have not specifically addressed plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1528-23